# **EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 |
| **CMC II, LLC, *et al.*,**[1] | Case No. 21-10461 (JTD) |
| **Debtors.** | (Jointly Administered) |
| | Related: 54, 83, 97, 101, 105 |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO MOTION [DOCKET NO. 54] FOR ENTRY OF ORDERS (I)(A) ESTABLISHING BIDDING PROCEDURES FOR THE SALES OF THE SNF ASSETS AND MANAGER AND REMAINING ASSETS; (B) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (C) APPROVING FORM AND MANNER OF NOTICE; (D) SCHEDULING A HEARING TO CONSIDER ANY PROPOSED SALE; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II)(A) APPROVING SALES OF THE SNF ASSETS AND MANAGER AND REMAINING ASSETS; (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF**

CMC II, LLC ("**CMC**") and certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**" or the "**Company**"), hereby file this omnibus reply (the "**Reply**") to the objections filed by the Official Committee of Unsecured Creditors (the "**UCC**") [Docket No. 97] and Angela Ruckh [Docket No. 101] and the limited objections filed by the United States of America [Docket No. 105] and Landlord FC Encore Green Cove Springs, LLC and FC Encore Perry, LLC [Docket No. 83] (collectively, the "**Objections**") to the Debtors' *Motion [Docket No. 54] For Entry of Orders (I)(A) Establishing Bidding Procedures for the Sales of the SNF Assets and Manager and Remaining Assets; (B) Establishing*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824).  The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

*Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing to Consider Any Proposed Sale; and (E) Granting Certain Related Relief; and (II)(A) Approving Sales of the SNF Assets and Manager and Remaining Assets; (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* (the "**Bid Procedures Motion**").  In addition, as set forth in the chart attached hereto as Exhibit A, the Debtors respond to the other objections filed by the UCC to the Debtors' other motions scheduled for the April 1, 2021 hearing. In further support of this Reply, the Debtors respectfully represent as follows:*

## PRELIMINARY STATEMENT

The Bid Procedures Motion is not controversial.  It does not seek approval of breakup fees or expense reimbursement, and instead outlines a customary postpetition marketing and sale process, followed by an auction and sale, with all parties' rights to object to such sale being fully reserved.  That is the substance of what the Court is being asked to approve, nothing more.  This is true notwithstanding the voluminous objections filed by the UCC and Ms. Ruckh.

The UCC and Ms. Ruckh repeatedly use a false narrative - - that the Debtors' DIP loan and sale process is an insider-controlled scheme concocted to "cleanse" the balance sheets of "likely hundreds (or more) related non-Debtor related parties[.]"  This invective and supposition is the brush that Ms. Ruckh (a Committee member) and the UCC use to paint the Bid Procedures Motion, the DIP financing motion, and, virtually every other routine motion of the Debtors.

The false narrative created by the UCC and Ms. Ruckh utterly ignores the role of the Debtors' independent manager, Alan Carr, and CRO, Paul Rundell, in deciding to proceed with the sale process before the Court, in seeking competing bids for both DIP financing (there were

none) and assets, and in choosing the Stalking Horse Bidders. Indeed, the Stalking Horse Bidders include the DIP Lender for the Manager and Remaining Assets as well as a third party for the sale of the skilled nursing facilities. Combined, these transactions will result in unsecured creditors benefitting from significant cash proceeds - - likely between $1 million and $2 million.[2]  It likewise ignores the arms'-length negotiations between the Debtors' independent fiduciaries and the DIP Lender to increase the DIP loan and improve the terms so that these cases could be adequately funded without putting into jeopardy the Debtors' ability to repay other federal obligations. Finally, this narrative ignores the fact that the Debtors' affiliates simply are not liable for the Ruckh Judgment, and instead is premised on conjecture that the Debtors' affiliates have engineered the bankruptcy process to remove "tremendous liability" from their balance sheets.

The third objection, from the United States, does not engage in the wild supposition and speculation that underpins the objections of Ms. Ruckh and the UCC.  And that is an important distinction, because it is the United States that holds the Ruckh Judgments and is the Debtors' largest creditor, by hundreds of millions of dollars.  The Debtors have agreed to make certain changes to address most of the United States' objections, as explained below.

Finally, the landlords of the Debtors' two skilled nursing facilities lodged a limited objection to ensure that a deadline is set for adequate assurance information to be presented.  The Debtors will provide this information and have no objection to doing so.

The procedures are fair and reasonable, and balance the competing views and interests of multiple parties in these Chapter 11 Cases. For example, the United States has requested that the marketing process be extended by sixty days to accommodate additional bids. On the other hand,

---

[2]       The UCC Objection supposes that there will be no cash for creditors stemming from the receivables of the two skilled nursing facilities.  *See* UCC Objn. n. 10.  Although this assertion fits with the UCC's false narrative, it is not accurate.

Ms. Ruckh argues that the sale process (at least as regards the SNFs) should be immediately terminated and the SNF Assets should be sold to the SNF Stalking Horse Bidder for the current amount of the SNF Stalking Horse Bid.   The Debtors' proposed timeline falls squarely in the middle.

In summary, the Debtors have proposed fair and reasonable procedures by which to sell their assets, including operating assets and potential litigation claims.  The decision to sell was made by the Debtors' independent fiduciaries and independent advisors in the sound exercise of their business judgment.  Any objections to the sales are preserved to the sale approval stage, and are not determined through approval of the bidding procedures.  Accordingly, the Court should grant the relief requested in the Bid Procedures Motion and permit the Debtors to commence the marketing process forthwith. The Debtors address the Objections below.

## REPLY

### 1. <u>The Debtors May Sell Potential Litigation Claims</u>

1.       The Ruckh and UCC objections dispute that the Debtors can or should sell potential litigation claims.[3]  *See, e.g.*, UCC Objn. ¶ 6, 31; Ruckh Objn. ¶ 15, but this flat proposition is contrary to both state law and bankruptcy law, which generally holds that claims and causes of action are freely alienable.  State law permits the sale of claims and causes of action.  *See, e.g.*, *Kent Gen. Hosp., Inc. v. Blue Cross and Blue Shield Of Delaware, Inc.,* 442 A.2d 1368, 1371 (Del. 1982) ("Public policy in Delaware favors free alienability of choses in action."); *One Call Prop. Services, Inc. v. Security First Ins. Co.,* 165 So. 3d 749 (Fla. 4th DCA 2015) (under Florida law, "[a] chose in action arising out of contract is assignable and "may be sued upon and recovered by the assignee in his own name and right."") *quoting Spears v. W. Coast Builders' Supply Co*., 101

---

[3]        As discussed herein, this objection is particularly confusing when considering that Ms. Ruckh, in fact, sold a portion of her litigation recovery in the Ruckh Litigation.

Fla. 980, 983, 133 So. 97, 98 (1931).  So does the Bankruptcy Code. *See* 11 U.S.C. §541(a)(1) (estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case.") and § 363(b) (trustee may use, sell or lease property of the estate). *See also Emoral, Inc. v. Diacetyl* (*In re Emoral, Inc.*), 740 F.3d 875,  (3d Cir. 2014) (prepetition successor liability claims constitute property of debtor's estate under Section 541(a) which trustee could release in settlement); *Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 257 (5th Cir. 2010) ("As a general matter, a trustee may sell causes of action belonging to the estate…A trustee may sell litigation claims that belong to the estate, as it can other property, pursuant to §363(b).").

2.      In the business judgment of the Debtors' independent fiduciaries, Mr. Carr and Mr. Rundell, the same should be sold here.  As explained in the Bid Procedures Motion, the value to be realized through the stalking horse bid for the Manager and Remaining Assets is approximately equal to the likely collectable value thereof, without deduction for litigation costs, uncertainties or recovery risk.  Moreover, and critically at this stage of the Debtors' bankruptcy cases, if the *market* determines the claims justify a higher price, then a competing bidder will emerge.  All that the Debtors seek at this procedures stage is the ability to proceed to test that market, a test that is fully consistent with their fiduciary duties and business judgment.  The rights of parties in interest to argue that the proposed marketing process did not generate sufficient value for the claims are fully preserved.

3.      In objecting to the proposed procedures, the UCC cites a single case, *In re Exaeris, Inc.*, for the proposition that the "Litigation Assets" cannot be sold to the DIP lender.  However, *Exaeris* is a sale case, not a bid procedures case.  It does not stand for the proposition for which it is cited and is factually distinguishable.  Specifically, in *Exaeris*, the sale proponent (a creditors committee) filed a motion for approval of a rushed sale through a credit bid to a DIP lender/insider.

*In re Exaeris, Inc.*, 380 B.R. 741, 745 (Bankr. D. Del. 2008)  The "marketing" of the assets, which included potential claims as well as "hard" assets such as the debtor' business, including stock in an operating subsidiary, intellectual property, inventory, customer lists, and certain potential claims against the insider or otherwise related to the purchased assets, was non-existent; indeed, the financial advisor in charge of the marketing had only purported to market the assets over the three-week period spanning the Christmas and New Year's holidays, and could neither recall a single person to whom he marketed the assets nor testify as to a range for the potential asset values. *Id.*

4.       The court found that the sale proponent, after an evidentiary hearing, had failed to meet its burden of proof to establish that the proposed transaction met the well-settled standards for approval of a sale: a sound business purpose, the fairness of the proposed sale terms, reasonable notice, and the good faith of the purchaser.   *Id.* at 744-46.   Importantly, the Court in denying approval of the sale for lack of supporting proof, did not lay down a blanket prohibition against the sale of litigation claims; to the contrary, the court analyzed the proposed sale (which included potential litigation claims) under both sale standards and those applicable to settlements, and rejected the motion for a failure of supporting evidence, not as a matter of law, as the UCC suggests.

5.       While it is clear that the Debtors' claims can be marketed, it is also clear in this case that the claims *should* be marketed. Exposure to the market is preferable to evidentiary disputes regarding the value of a debtor's assets. *In re Scimeca Found., Inc.*, 497 B.R. 753, 775 (Bankr. E.D. Pa. 2013)("an appraisal is not as persuasive as a commercially reasonable sale of an asset which conclusively establishes the market value of that asset").[4] By exposing the Debtors'

---

[4]       To be clear, while the Debtors believe that marketing their Assets (including the Litigation Assets) is the most appropriate method to determine the value of such Assets, the ability of the parties to object on this basis is

Assets to continued marketing in the Debtors' proposed commercially reasonable process, the value of the Debtors' Assets (including the Litigation Assets) will be conclusively determined.

6.     **The Bid Procedures Are Fair And Reasonable.**   As a threshold matter, the bidding procedures authorize the Debtors to market their assets (both operating assets as well as potential claims and causes of action), provide prospective bidders with diligence information, determine whether potential bidders are qualified, accept competing bids, and conduct an auction if qualified competing bids are received - - all in consultation with the UCC.   These are the elements of almost every bidding procedure and sale process approved in this District.   *See*, *e.g.*, *In re Lucky's Market Parent Company, LLC*, Case No. 20-10166 (JTB) [D.I. 828] (order approving contested bid procedures).

7.     The Debtors will present evidence ***at the sale hearing*** to meet their burden to approve the sales, including the sale of the Litigation Assets to the DIP Lender as proposed or to a competing bidder that presents a higher and better offer.   At this stage, however, the Debtors must only show that the process they have proposed is fair and reasonable.   The Debtors have satisfied their burden, for the reasons set forth herein and in the Bid Procedures Motion, and as will be demonstrated at the hearing on the Bid Procedures Motion.

8.     Indeed, the current facts and circumstances show that the Debtors' proposed marketing procedures and arm's-length negotiations have generated value, which they believe will be sufficient to satisfy the DIP obligations and provide a recovery to holders of unsecured claims.

---

preserved. Similarly, the Debtors reserve their rights to dispose of any such claims via a Rule 9019 Settlement, which will have the same economic effect on the estates as a sale of any such claims to a third party. *See In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) ("The settlement of a cause of action held by the estate is plainly the equivalent of a sale of that claim. There is no difference in the effect on the estate between the sale of a claim (by way of assignment) to a third party and a settlement of the claim with the adverse party.").

If there is additional value in the Debtors' Assets, the marketing process will capture this value for the benefit of the Debtors' stakeholders.

9.      The UCC alleges that there is no "current market" for the Litigation Assets. *See id.* However, ample potential bidders for litigation claims can be identified - - litigation funding companies, plaintiffs' lawyers, claims traders and remnants purchasers, to name a few.  Indeed, Ms. Ruckh herself sold a portion of her litigation claims in the Ruckh action to a litigation funder to help finance her crusade against the Debtors. *See United States ex rel. Angela Ruckh v. Salus Rehabilitation, LLC,* Case No. 18-10500, 2020 WL 3467393 at n.7 (11th Cir. June 25, 2020). As the Debtors have done with respect to their operating assets (the UCC has already referred several potential bidders), the Debtors welcome referrals of potential interested bidders for the Litigation Assets, and will make sure that their data room contains adequate diligence information to support bidding for the "Litigation Assets" following entry of the bidding procedures order.

10.     **Potential Sale Objections Are Preserved And Do Not Warrant Disapproval Of Bidding Procedures.**  The UCC devotes extensive - - and entirely unnecessary - - pages of its objection to speculation, conjuring up conspiracy theories from whole cloth.  *E.g.*, UCC Objn. at ¶¶ 36 – 38 (alleging, without basis, an "iceberg" of unspecified, ostensibly improper non-debtor affiliate transactions that somehow make it "***probable*** that Consulate's concerted efforts to insulate the larger enterprise and drain the Debtors' value long predate the Petition Date.").  This kind of unsupported allegation is neither supported with facts nor relevant in the context of the Bidding Procedures Motion - - it falls into the category of a potential sale objection, not an objection to the bidding procedures.

11.     The UCC contends in error that the "sale process" will unfairly hand over the "Litigation Assets" to the DIP lender for effectively "nothing."  UCC Objn. ¶¶ 28-29.  Objections

to the price and to the buyer, however, are sale objections that are preserved, not issues to be decided at the bidding procedures stage. The UCC also complains that the process is "a perversion" because it is concerned that information regarding the potential litigation claims against non-debtor affiliates may not be made available to potential bidders, but this too is a sale objection. *Id.* ¶¶ 30-31.

12. The UCC further argues that the DIP Lender should not be entitled to a finding of good faith, *see* UCC Objn. at ¶¶ 50-51, and that the temporary stays under Bankruptcy Rules 6004(h) and 6006(d) should not be waived. These, too, are premature sale objections. The Debtors will put on evidence to address the good faith issue at the sale hearing, and to address waivers under the foregoing rules. The UCC's objections are preserved.

13. **The Debtors' Proposed Timeline Is Reasonable And Supported**. The UCC complains that the Debtors' proposed sale timeline is unreasonable and unsupported, and argues for an extended process for the operating assets only. UCC Objn. at ¶ 42. The United States argues for a 60-day extension of the sale process, U.S. Objn. at ¶ 20, while Ms. Ruckh urges the Court to end immediately the marketing process for the Debtors' skilled nursing facilities, and to prohibit the Debtors from selling CMC II and any claims and causes of action.[5] Ruckh Objn. at ¶¶ 13-16.

14. The Debtors' proposed procedures and timeline, which were heavily negotiated by the Debtors' independent fiduciaries with the DIP Lender prior to the filing of the Bidding Procedures Motion, fall squarely in the middle of the Objections, proposing a 34-day postpetition marketing period. In light of the extensive prepetition marketing period and ongoing marketing,

---

[5]    Ms. Ruckh would thus supplant her own pecuniary interests for the business judgment of the Debtors' independent fiduciaries, who have given careful consideration to all of the Debtors' constituents, including current patients, employees, vendors with ongoing relationships with the Debtors, and creditors that no longer do business with the Debtors. There is no basis for doing so.

the Debtors' proposed timeline is fair and reasonable. Such marketing period is in line with bidding procedures orders approved in this and other Districts and provides ample time for parties in interest to evaluate and structure a bid. *See e.g.*, *In re Loot Crate, Inc*., No. 19-19-11791 (BLS) (Bankr. D. Del. Sept. 11, 2019) (approving bid procedures establishing a bid deadline for 12 days following the approval, despite objections from the Official Committee of Unsecured Creditors); *In re uBiome, Inc.*, No. 19-11938 (LSS) (Bankr. D. Del. Nov. 21, 2019) (approving bid procedures establishing a bid deadline for 15 days following the approval); *In re Gorham Paper and Tissue, LLC*, No. 20-12814 (KBO) (approving bid procedures setting the bid deadline for 22 days following the approval); *In re MTE Holdings LLC,* No. 19-12269 (CSS) (Bankr. D. Del. Oct. 14, 2020) (approving bid procedures establishing a bid deadline for 23 days following the approval); *In re Lucky's Market Parent Company, LLC*, No. 20-10166 (JTD) (Bankr. D. Del. July 10, 2020) (approving bid procedures setting the bid deadline for 31 days following the approval); *In re NanoMech, Inc.*, No. 19-10851 (CSS) (Bankr. D. Del. May 14, 2019) (approving bid procedures establishing a bid deadline for 34 days following the approval)

15. **Credit Bidding**.  The UCC contends that credit bidding should not be permitted at all, but then later proposes that credit bidding should be prohibited only as to the Litigation Assets, because the UCC harbors suspicions regarding the DIP Lender and non-debtor affiliates of the Debtors.  UCC Objn. at ¶¶ 43 – 49.  What is indisputable, however, is that the DIP loan is a ***new money loan.***  The UCC cites not one decision, and the Debtors' research to date has found none, where a new money DIP loan was denied the right to credit bid. The Debtors have already addressed these arguments at length in their DIP Reply [Docket No. 108, ¶ 32] and incorporate the same by reference.

16.    **Technical Changes To Bid Procedures**.  After responding promptly to the UCC's 45 numbered discovery requests with extensive requested information, the Debtors were not contacted by the UCC regarding the Bidding Procedures Motion or other motions before ***any*** of the UCC objections were filed.  The Debtors thus were surprised to see in the UCC Objection the statement that the UCC had "***previously circulated*** to the Debtors" marked copies of the various bidding procedures documents reflecting technical changes requested by the UCC.  UCC Obj. ¶ 8 (emphasis added).  That did not happen, a fact that UCC counsel has subsequently acknowledged.

17.    This "oversight" is indicative of the underlying problem here: the UCC simply wants to take command of the Debtors and these bankruptcy cases, at any cost.  This is further evidenced by the fact that the UCC's Objection only identifies the UCC's technical comments to the Debtors' bidding procedures after 27 pages of speculation and rhetoric.  *See* UCC Obj. ¶ 55 (listing 17 discrete proposed changes to procedures).  Had the UCC raised these requests prior to filing their Objection, as they claimed to have done and as is consistent with practice in this District, the Debtors undoubtedly could have resolved many of them prior to the Objection.  The Debtors will seek to resolve these prior to the hearing; to the extent the same are not resolved, the Debtors will address them at the hearing.

18.    **Objections of the United States**.  The United States' Objection contains four discrete arguments.  Each is addressed below.

19.    The United States requests that it be identified as a consultation party.  U.S. Obj. at 3, item IV.  The Debtors do not oppose the request.

20.    The United States asks that the Court defer until the sale hearing the making of a good faith finding under Bankruptcy Code section 363(m) as concerns the DIP Lender's stalking

horse bid. The Debtors do not oppose the request, and will file the asset purchase agreement with the DIP Lender's stalking horse bid once it has been finalized and executed.

21.     Next, the United States argues that a "robust" sale process for the Debtors' assets makes sense, and should be extended by 60 days. The Debtors believe that the prepetition marketing effort was extensive, and in combination with the proposed postpetition marketing period as a second-level market check, will be sufficient. The Debtors do not have liquidity to support a further extended marketing period, and, moreover, understand from their advisors that the extended period is not likely to produce commensurate additional value to justify the continued costs of supporting operations and chapter 11 expenses. Moreover, the Debtors' DIP loan contains negotiated milestones that require the sale period to be as proposed. For these reasons, the additional 60-day period proposed by the United States should not be imposed upon the Debtors' proposed sale process.

22.     Lastly, the United States contends that the proposed bidding procedures and procedures order must clearly state that any successful bidder for the skilled nursing facilities that seeks to take an assumption and assignment of the Debtors' provider agreements must comply with applicable federal law and regulations. The Debtors' proposed stalking horse bidder for those assets does not intend to take an assumption and assignment of the provider agreements and will submit all required applications to comply with the applicable regulatory requirements, including change of ownership. Accordingly, the issue is moot, at least in respect of the stalking horse bid for the skilled nursing facilities. The Debtors have agreed to add language to the bidding procedures and approval order that states CMS' position and permits the Debtors to reserve their rights as appropriate, and will seek to resolve this prior to the hearing. Through this language, the Debtors will seek to preserve optionality and maximize value. Such language will also enable the

parties to resolve this issue, if necessary, at the hearing to consider approval of any Sale of the SNF Assets.

23.     <u>Other Motions and Objections</u>.  The UCC and Ms. Ruckh have objected to most of the Debtors' other motions.  Attached hereto as Exhibit A is a chart summarizing the objections and the Debtors' responses thereto.

<u>**CONCLUSION**</u>

The Debtors' proposed bidding procedures and sale process are fair and reasonable and will properly subject the Debtors' assets to a market check and maximize value.  They are also consistent with those approved in most sale cases in this District.   The Objections should be overruled, as set forth above, and the Debtors' proposed procedures and sale process should be approved with the modifications described above.

Dated:  March 31, 2021          **CHIPMAN BROWN CICERO & COLE, LLP**
         Wilmington, Delaware


                                 _/s/ Robert A. Weber_
                                 William E. Chipman, Jr. (No. 3818)
                                 Robert A. Weber (No. 4013)
                                 Mark L. Desgrosseilliers (No. 4083)
                                 Mark D. Olivere (No. 4291)
                                 Hercules Plaza
                                 1313 North Market Street, Suite 5400
                                 Wilmington, Delaware 19801
                                 Telephone:     (302) 295-0191
                                 Facsimile:     (302) 295-0199
                                 Email:         chipman@chipmanbrown.com
                                                weber@chipmanbrown.com
                                                desgross@chipmanbrown.com
                                                olivere@chipmanbrown.com

                                 *Proposed Counsel to the Debtors and*
                                 *Debtors-In-Possession*

# **EXHIBIT A**

In re CMC II, et. al. Case no. 21-10461

Summary of Objections and Debtors' Responses

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Motion of Debtors for Entry of Interim and Final Orders Authorizing the Implementation of Procedures to Maintain and Protect Confidential Health Information as Required by Applicable Privacy Rules [Docket No. 5, Filed 3/2/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 15, UCC argues that must have access to confidential patient information for current and former patients that is the subject of the Debtors' motion for procedures to protect confidential patient information (Docket No. 5) | As explained in the Debtors' motion, the information at issue is protected from disclosure under HIPAA.  The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |
| Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; (II) Modifying Certain Requirements of Bankruptcy Code Section 345(b); and (III) Authorizing Continuance of Intercompany Transactions and Honoring Certain Related Prepetition Obligations [Docket No. 7, Filed 3/2/21] | Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; (II) Modifying Certain Requirements of Bankruptcy Code Section 345(b); and (III) Authorizing Continuance of Intercompany Transactions and Honoring Certain Related Prepetition Obligations [Docket No. 99, Filed 3/29/21]<br><br>Objection and Joinder to the Unsecured Creditor Committee's Objection to (A) Cash Management Motion, (B) Schedules and Statement Extension Motion, (C) DIP Financing and (D) Sale Procedures [Docket No.101, Filed 3/29/21] | The UCC alleges a lack of disclosure of information relating to intercompany transactions, and request that granting the motion (i) be subject to the UCC receiving access to all records reflecting any Debtor-related intercompany transfer; and (ii) provide the UCC a mechanism to vacate any intercompany transfers the UCC deem improper | The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties, and specifically have provided all UCC professionals information related to intercompany transfers. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Obligations and (B) Continue Employee Benefit Programs and (II) Granting Related Relief [Docket No. 8, Filed 3/2/21] | Limited Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Obligations and (B) Continue Employee Benefit Programs and (II) Granting Related Relief [Docket No. 104, Filed 3/29/21] | UCC argues that (i) payments under bonus plans must be subject to statutory employee wages claim cap (¶ 8), (ii) additional detail regarding recipients must be provided to UCC (¶10), and (iii) UCC must have ability to "review and challenge" all intercompany payments and obligations (¶ 11). | There are no payments to employees under the final order that would exceed the statutory cap, inclusive of any requested bonus payment.<br><br>As set forth in the Wage Motion and on the record at the first day hearing, of the $17,000 requested, (i) a $2,000 quarterly bonus would be paid to a non-insider administrator; and (ii) $15,000 would be paid to non-insider employees for Spot Awards.<br><br>The Debtors have provided the UST with the titles of all employees entitled to bonuses and will likewise share this information with the UCC. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |
| Motion of Debtors for Entry of Interim and Final Orders Authorizing Debtors to (I) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder, (II) Continue to Honor Premium Finance Obligations, and (III) Renew, Revise, Extend, Supplement, Change, or Enter into New Insurance Policies and Insurance Premium Financing Agreements [Docket No. 9, Filed 3/2/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 12, UCC argues that 4 of Debtors' routine first day motions should be delayed pending adoption of procedures to ensure that UCC receives "ongoing and full disclosure of, among other things, all intercompany obligations and transfers, on a regular basis," and preserves UCC's "ability to raise future objections, challenges, and/or claims regarding any transfers or obligations…" | The Debtors have provided and continue to provide the UCC with requested information relevant to the UCC's duties, and specifically have provided all UCC professionals information related to intercompany transfers. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Motion of Debtors for Entry of Interim and Final Orders Authorizing Debtors to Pay Certain Prepetition Taxes and Related Obligations [Docket No. 10, Filed 3/2/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 12, UCC argues that 4 of Debtors' routine first day motions should be delayed pending adoption of procedures to ensure that UCC receives "ongoing and full disclosure of, among other things, all intercompany obligations and transfers, on a regular basis," and preserves  UCC's "ability to raise future objections, challenges, and/or claims regarding any transfers or obligations…" | The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties, and specifically have provided all UCC professionals information related to intercompany transfers. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |
| Motion of Debtors for Entry of Interim and Final Orders (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment; (II) Establishing Procedures for Resolving Objections by Utility Companies; (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service; and (IV) Authorizing Debtors to Honor Billing Processor Obligations in the Ordinary Course of Business [Docket No. 11, Filed 3/2/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 12, UCC argues that 4 of Debtors' routine first day motions should be delayed pending adoption of procedures to ensure that UCC receives "ongoing and full disclosure of, among other things, all intercompany obligations and transfers, on a regular basis," and preserves  UCC's "ability to raise future objections, challenges, and/or claims regarding any transfers or obligations…" | The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties, and specifically have provided all UCC professionals information related to intercompany transfers. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |
| Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Certain Prepetition Obligations Under Customer Programs and (II) Granting Related Relief [Docket No. 12, Filed 3/2/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 12, UCC argues that 4 of Debtors' routine first day motions should be delayed pending adoption of procedures to ensure that UCC receives "ongoing and full disclosure of, among other things, all intercompany obligations and transfers, on a regular basis," and preserves  UCC's "ability to raise future objections, challenges, and/or claims regarding any transfers or obligations…" | The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties, and specifically have provided all UCC professionals information related to intercompany transfers. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Debtors' Motion for Entry of an Order Extending Time for Debtors' to File Schedules and Statements [Docket No. 59, Filed 3/15/21] | Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Motion of the Debtors for Entry of an Order Extending Time for Debtors' to File Schedules and Statements [Docket No. 98, Filed 3/29/21]<br><br>Objection and Joinder to the Unsecured Creditor Committee's Objection to (A) Cash Management Motion, (B) Schedules and Statement Extension Motion, (C) DIP Financing and (D) Sale Procedures [Docket No.101, Filed 3/29/21] | At ¶¶10-11, UCC alleges a lack of disclosure of information available to investigate claims and assets, and that an extension is inappropriate given the Debtors' proposed sale timeline. | The Debtors have provided and continue to provide UCC with requested information relevant to the UCC's duties.<br><br>As noted in the Motion and UCC Objection, preparation of the Debtors' schedules and statements involves compiling information from books, records and documents relating to over 4,600 claims, assets, and contracts from each of the Debtor entities, thus requiring a significant amount of time and effort.<br><br>In consultation with the UST and A&M, the Debtors are working diligently to file their schedules and statements by April 12, 2021, in advance of the section 341 meeting currently scheduled for April 14. | Going Forward. |
| Application of the Debtors for Entry of an Order Pursuant to Sections 327(a) And 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2(h), (I) Authorizing The Retention and Employment of JS Evans LLC d/b/a Evans Senior Investments as the Debtors' Broker, Effective as of the Petition Date, (II) Waiving Certain Information Requirements of Local Rule 2016-2(d), And (III) Granting Related Relief [Related Docket No. 61, Filed 3/15/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 14, UCC argues that the Debtors' retention of broker Evans Senior Investments (Docket No. should only be granted if it is deemed exclusive and made subject to certain termination rights and conditions, including an automatic termination upon plan confirmation or sale of Debtors' business assets, and terminable by Debtors upon notice. | The Debtors intend to submit a revised form of order prior to the hearing to address these comments. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Motion of Debtors for Entry of an Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals Effective as of the Petition Date [Docket No. 62, Filed 3/15/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 13, UCC argues that Debtors' ordinary course professionals motion should require that UCC receive and have opportunity to object to all OCP invoices prior to any payment. | The Debtors intend to submit a revised form of order prior to the hearing to address these comments. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |
| Application of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b)to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Paul Rundell as Chief Restructuring Officer for the Debtors Effective as of the Commencement Date [Docket No. 64, Filed 3/15/21] | Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Application of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b)to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Paul Rundell as Chief Restructuring Officer for the Debtors Effective as of the Commencement Date [Docket No. 100, Filed 3/29/21]<br><br>Amended Objection and Reservation of Rights of the Official Committee of Unsecured Creditors to the Application of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b)to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Paul Rundell as Chief Restructuring Officer for the Debtors Effective as of the Commencement Date [Docket No. 102, Filed 3/29/21] | At ¶¶10-12, the UCC argues that additional disclosures are needed regarding the engagement and services of A&M and its affiliates and any fees received prior to the Petition Date.  The UCC also requests the ability to review and object to A&M's fee applications (¶14). | The Debtors have provided additional information and disclosures to the UCC in response to the objection, together with a proposed revised form of order.  This information was previously provided by A&M to the UST in response to informal comments. | The Debtors and UCC are preparing a revised form of order to resolve the objection. |

| Debtors' Motion | Objection | Objection Summary | Debtors' Response | Status |
|---|---|---|---|---|
| Debtors' Application for Appointment of Stretto as Administrative Advisor Effective as of the Petition Date [Docket No. 72, Filed 3/19/21] | Omnibus Objection and Reservations of Rights of the Official Committee of Unsecured Creditors to Certain of the Debtors' Motions [Docket No. 103, Filed 3/29/21] | At ¶ 13, UCC argues that Debtors' application to retain Stretto as administrative advisor should require that UCC receive and have opportunity to object to all Stretto invoices prior to any payment. | The proposed order at ¶4 provides that Stretto shall apply for compensation and reimbursement of expenses "in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered in these cases regarding professional compensation and reimbursement of expenses." Under the proposed order to *Debtors' Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 58], the UCC is already a Notice Party entitled to receive Monthly, Interim and Final Fee Application Requests and is entitled to object in accordance with the procedures set forth therein.

This application is scheduled to be heard at the April 27, 2021 hearing. The Debtors reserve the right to supplement this response as necessary prior to that hearing. | This matter is scheduled to be heard at the April 27, 2021 hearing at 2:00 p.m.

The Debtors are working with the UCC on a revised form of order to be submitted in advance of the hearing. |