# **EXHIBIT A-1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CMC II, LLC *et al.*,[1] | Case No. 21-10461 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No.: 54** |

**ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE SKILLED NURSING FACILITY ASSETS OWNED BY DEBTORS 207 MARSHALL DRIVE OPERATIONS LLC AND 803 OAK STREET OPERATIONS LLC, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "**Motion**")[2] of the Debtors for the entry, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1 and 6004-1, of an order (i)(a) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets; (b) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases; (c) approving the form and manner of notice thereof; and (d) granting related relief; and (ii)(a) authorizing the sale of the Assets to the Successful Bidders, free and clear of liens, claims, encumbrances and other interests; (b) approving the assumption and assignment of the certain executory contracts and expired leases (the "**Designated Contracts**");

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824). The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures (defined below).

and (c) granting related relief; and the Court having reviewed the Motion and having found that: (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; (ii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances, and no further notice of the Motion is necessary; and after due deliberation; and after hearings held on April 15-16, 2021; and  the Court having determined that entry of this Order is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown, therefor;

**IT IS FOUND AND DETERMINED THAT:**

A.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion relating to the bidding process for assets owned by Debtors 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC that are defined in the Motion as the "SNF Assets," including the Transferred Assets and excluding the Excluded Assets (as such terms are defined in the Motion), including approval of (1) the Bidding Procedures, including the establishment of the Bid Deadline and the scheduling of the Auction and Sale Hearing as set forth therein and herein, (2) the procedures described below for the assumption and assignment of Designated Contracts to the Successful Bidder, including the determination of the Cure Amounts, and (3) the forms of the Sale Notice and the Contract Assumption Notice.

B.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider

granting the other relief requested in the Motion with respect to the SNF Assets, including approval of the Sale and the transfer of the SNF Assets to the Successful Bidder for such assets free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

C.      The Bidding Procedures substantially in the form attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the SNF Assets.

D.      The Debtors' proposed notice of the Bidding Procedures, the Auction, and the Sale Hearing with respect to the SNF Assets is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.      The notice procedures set forth herein and in the Bid Procedures relating to the assumption and assignment to the Successful Bidder for the SNF Assets of Designated Contracts (including the delivery of supplemental contract assumption notices and the identification of the Successful Bidder, if a Successful Bidder is not the SNF Stalking Horse Bidder), and the form of Contract Assumption Notice attached hereto as <u>Exhibit 3</u>, are reasonably calculated to provide counterparties to the Designated Contracts with proper notice of the potential assumption and assignment of the Assumed Contracts and Leases, any Cure Amounts relating thereto, and the ability of the SNF Stalking Horse Bidder or other Successful Bidder to provide adequate assurance of future performance under such Designated Contracts.

F.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

G.      To the extent any of the preceding findings of fact constitute conclusions of law,

they are adopted as such. To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

### A. Approval of Bid Procedures

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to the relief requested in the Motion relating to the Bidding Procedures for the SNF Assets that have not been withdrawn, waived, or settled are overruled except as reflected in the provisions of this Order. All rights with respect to the objections to the relief requested in the Motion relating to the proposed sale of substantially all of the SNF Assets of Debtors 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC (except those specifically related to the validity and structure of the SNF Stalking Horse Purchase Agreement), to the assumption and assignment of executory contracts and unexpired leases related to the SNF Assets, to Cure Amounts (as defined herein), and to adequate assurance of future performance with respect to executory contracts and unexpired leases related to the SNF Assets, are expressly reserved and any such objections must be asserted on the timeline set forth in the Bidding Procedures.

3.      The Bidding Procedures related to the SNF Assets attached hereto as Exhibit l are **APPROVED** and fully incorporated into this Order. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures in accordance herewith. The failure specifically to include a reference to a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

### B. Approval of the SNF Assets Sale Notice

4.      The SNF Assets Sale Notice (the "**Sale Notice**"), attached hereto as Exhibit 2, is

hereby **APPROVED**.

5.      The Debtors shall, within two (2) business days after the entry of this Order, serve a copy of the Sale Notice and this Order by first class mail, postage prepaid on (a) the U.S. Trustee, (b) counsel to the Official Committee of Unsecured Creditors in these cases, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all known creditors of the Debtors, (e) counsel to the Stalking Horse Bidder, (f) counsel to all prepetition secured parties, and (g) all parties known to the Debtors to have expressed interest in purchasing all or a portion of the Assets.

6.      On the Service Date or as soon as practicable thereafter, the Debtors may, but shall not be required to, publish notice of the proposed Sale, substantially in the form of the Sale Notice (the "**Publication Notice**"), once in the national edition of The Wall Street Journal, The New York Times, USA Today, or another publication of similar circulation or in a local or trade publication, as determined by the Debtors.  The Debtors submit that such Publication Notice shall be sufficient and proper notice of any Sale to any other interested parties whose identities are unknown to the Debtors.

### C. Bid Deadline and Auction

7.      The Bid Deadline shall be May 20, 2021 at 5:00 p.m. (Eastern). The Bid Deadline may be extended by the Debtors in consultation with counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases and counsel to the United States (the "**Consultation Parties**").

8.      The Debtors shall have the right, in accordance with the Bidding Procedures and in consultation with the Consultation Parties, to determine whether a bid is a Qualified Bid and shall notify all Potential Bidders whether their bids have been recognized as such as promptly

as practicable after a Potential Bidder delivers all of the materials required by the Bidding Procedures. Notwithstanding anything to the contrary herein or in the Bidding Procedures, the SNF Stalking Horse Bidder (as defined in the Motion) and the DIP Lender each are hereby deemed Qualified Bidders for all purposes, and the SNF Stalking Horse Purchase Agreement is deemed a Qualified Bid for all purposes in connection with the bidding process, the Auction, and the Sale.

9.      The Auction, if an auction is necessary, shall be held at 10:00 a.m. (Eastern) on May 25, 2021.   In light of the existing COVID-19 pandemic, no person or entity shall be required to attend the Auction in person.   The Auction shall be held by Zoom or other videoconference platform, and all entities entitled to attend the Auction, including the Consultation Parties, shall receive instructions on attending the Auction via videoconference on or before the date of the Auction.

10.      If no Qualified Bids for the SNF Assets other than the SNF Stalking Horse Purchase Agreement are received before the Bid Deadline, no Auction shall be conducted, the SNF Stalking Horse Bidder shall be deemed the Successful Bidder, and the Debtors shall seek approval of the sale of the SNF Assets pursuant to the SNF Stalking Horse Purchase Agreement at the Sale Hearing.

11.      If the Auction is conducted, each Qualified Bidder attending shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code, with respect to the bidding or the Sale.   The Auction shall be recorded and transcribed.   The Debtors, the SNF Stalking Horse Bidder, any other Qualified Bidder that has timely submitted a Qualified Bid, the Consultation Parties, the DIP Lender, and the advisors to each of the foregoing, shall attend and may participate in the Auction.   The Auction shall be open

to creditors to attend and observe.

12.     If the Auction is conducted, the Debtors, in consultation with the Consultation Parties, may adopt other rules for the conduct of the Auction at the Auction which, in their judgment, will better promote the goals of the Auction.

13.     The Debtors shall determine, in consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best offer for the SNF Assets, as well as any additional liabilities to be assumed by the relevant Qualified Bidder and any additional costs which may be imposed on the Debtors.

14.     Holders of claims secured by unavoidable, properly perfected liens on all or a portion of the SNF Assets (including proceeds thereof) shall, pursuant to section 363(k) of the Bankruptcy Code, be permitted, but not compelled, to credit bid up to the full amount of their secured claims for any such SNF Asset (such bid, a "**Credit Bid**").  Each Bid must clearly set forth the amount of the total consideration to be provided to the Debtors, including and identifying separately any cash and non-cash components (the "Bid Value").  Any Bid providing for a non-cash component must be accompanied by either cash or a credit bid of the DIP Obligations in the amount of at least $2 million.  For the avoidance of doubt, the SNF Assets, including the proceeds thereof, constitute DIP Collateral, as such term is defined in the *Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), (B) Grant Senior Liens and Superpriority Administrative Expense Status; (II) Scheduling Final Hearing; and (III) Granting Related Relief* [Docket No. 37] (together with any further interim or final orders, the "**DIP Order**").  The DIP Lender shall have the unqualified right to Credit Bid up to the full amount of the DIP Obligations (as defined in the DIP Order) in connection with the sale of any of the DIP

Collateral. Every dollar of a Credit Bid shall be treated the same as a dollar from a cash bid.

15.     Within one (1) business day after conclusion of the Auction if one is held, or upon the cancellation of the Auction and Identification of Successful Bidder, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder and Back-Up Bidder (the "**Post-Auction Notice**") for the SNF Assets and shall provide a copy of the same by e-mail, facsimile or overnight mail to contract counterparties.

### D.  Sale Hearing and Objections to Sale

16.     The Sale Hearing for the SNF Assets shall be held on June 2, 2021 at 1:00 p.m. (Eastern) before the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Courtroom No. 5, Wilmington, Delaware 19801.

17.     Any objections to the Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules and the Local Rules, and (d) be filed with the Bankruptcy Court and served in accordance with the rules of this Court upon: (i) counsel to the Debtors: Chipman Brown Cicero & Cole, LLP, 1313 N. Market St., Suite 5400, Wilmington, Delaware 19801 (*Attn*: William A. Chipman, Jr., Esq. (chipman@chipmanbrown.com), Mark L. Desgrosseilliers, Esq. (desgross@chipmanbrown.com), Robert A. Weber, Esq. (weber@chipmanbrown.com)); (ii) counsel to the SNF Assets Stalking Horse Bidder, *Bahnsen Legal Group, PLLC*, 131 NE 1st Avenue, Suite 100, Boca Raton, Florida 33432 (*Attn*: Jeffery Bahnsen, Esq. (jeff@bahnsenlaw.com));  (iii) counsel to the DIP Lender and Manager and Remaining Assets Stalking Horse Bidder, *Skadden, Arps, Slate, Meagher & Flom, LLP*, One Rodney Square, 920 N. King Street, Wilmington, Delaware, (*Attn*: Carl T. Tullson, Esq. (carl.tullson@skadden.com)); and *Skadden, Arps, Slate, Meagher & Flom, LLP*, 155 North

Wacker Drive, Chicago, Illinois, 60606-1720, (*Attn*:   James J. Mazza, Jr. Esq. (james.mazza@skadden.com) and Robert E. Fitzgerald, Esq. (robert.fitzgerald@skadden.com)); and (iv) counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 casesPorzio, Bromberg & Newman, P.C., 100 Southgate Parkway, Morristown, New Jersey 07960 (Attn: Robert M. Schechter (rmschechter@pbnlaw.com), Rachel A. Parisi (raparisi@pbnlaw.com), and David E. Sklar (desklar@pbnlaw.com)  (collectively, the "**Service Parties**") so as to be received no later than 5:00 p.m. (Eastern) on May 26, 2021.

18.     The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, in consultation with the Consultation Parties, to cancel the Sale at any time without prejudice to the rights of the Sellers or SNF Stalking Horse Bidder under the SNF Stalking Horse Purchase Agreement or any rights or remedies available to the DIP Lender under the DIP Documents (as defined in the DIP Order).

### E.  Contract Assumption and Assignment Procedures

19.     The Contract Assumption Notice, attached hereto as <u>Exhibit 3</u>, is hereby **APPROVED**.

20.     On or before May 5, 2021, the Debtors shall serve this Order and the Contract Assumption Notice upon each counterparty to the Designated Contracts and its counsel (if known), with a copy to counsel for the Official Committee of Unsecured Creditors.  The Contract Assumption Notice shall (i) state the date, time, and place of the SNF Asset Sale Hearing, (ii) specify the date by which any objection to the assumption and assignment of the Designated Contracts must be filed and served, (iii) include a description of each Designated

Contract that may be assigned to the Successful Bidder in connection with its Asset Purchase Agreement, and (iv) identify the Cure Amounts pursuant to section 365 of the Bankruptcy Code.

21.     In accordance with the Assumption Procedures, attached hereto as Exhibit 4, which procedures are hereby approved, the Successful Bidder may designate additional executory contracts and unexpired leases for assumption and assignment at any time up to and including the SNF Sale Hearing. In the event that any contract or lease is designated as a Designated Contract by the SNF Stalking Horse Bidder or the Successful Bidder for the SNF Assets or the proposed Cure Amount for a Designated Contract is modified after service of the Contract Assumption Notice, the Debtors shall, serve the Motion and a Supplemental Contract Assumption Notice upon each counterparty to such Designated Contracts and its counsel (if known), with a copy to the Consultation Parties. Each Supplemental Contract Assumption Notice will include the same information concerning the applicable Designated Contract as is required to be included in the Contract Assumption Notice.

22.     If any counterparty to a Designated Contract objects for any reason to the assumption and assignment of its Designated Contract (other than an objection to the ability of any Successful Bidder other than a Stalking Horse Bidder to furnish adequate assurance of future performance), including, without limitation, the proposed Cure Amount set forth in the Contract Assumption Notice or Supplemental Contract Assumption Notice (as applicable) or the ability of a Stalking Horse Bidder to provide adequate assurance of future performance under such Designated Contract, such counterparty must file with the Court a written objection complying with the Bankruptcy Code and stating, with specificity, the legal and factual bases therefor (including any information required to be provided pursuant to paragraph 23 below), and serve such objection so as to be received by the Service Parties by the later of: (i) May 26, 2021 at 5:00

p.m. (Eastern), or (ii) 5:00 p.m. (Eastern) on the date that is seven (7) calendar days after the date

of service of any Supplemental Contract Assumption Notice in respect of such Designated

Contract (the "**Designated Contract Objection Deadline**").

23.     Any objection to assumption or assignment of a Designated Contract based on

the proposed Cure Amount for such Designated Contract (each, a "**Cure Objection**") must set

forth with specificity each and every asserted default in the applicable Designated Contract, and

the monetary cure amount asserted by the counterparty to the extent it differs from the amount, if

any, proposed by the Debtors in the Contract Assumption Notice or the Supplemental Contract

Assumption Notice, as applicable.

24.     Notwithstanding the foregoing, a Designated Contract counterparty is

encouraged to contact Debtors' counsel prior to the deadline to file and serve an objection to the

Cure Amount in an attempt to reach consensus on the Cure Amount based upon reasonable and

supportable documentation provided by such counterparty.

25.     If following the Auction, the SNF Stalking Horse Bidder is not selected by the

Debtors as the Successful Bidder for the SNF Assets, then the Debtors shall serve the Auction

Results Notice on each counterparty to a Designated Contract proposed to be assigned to the

Successful Bidder or the Back-Up Bidder at the same time such notice is filed with the

Bankruptcy Court in accordance with paragraph 13 above, whether or not such counterparty

previously received a Contract Assumption Notice or Supplemental Contract Assumption

Notice.  Within two (2) business days, the Debtors shall also provide to such counterparties a

summary of adequate assurance information concerning the Successful Bidder and Back-Up

Bidder, if any.  In such event, each such counterparty shall be entitled to object to assumption

and assignment of its Designated Contract to the Successful Bidder or Back-Up Bidder based

solely on the identity of such Successful Bidder and/or the Back-Up Bidder and their respective ability to provide adequate assurance of future performance (an "**Adequate Assurance Objection**"); *provided*, that, any counterparty that was not previously served with a Contract Assumption Notice or Supplemental Contract Assumption Notice shall receive a Supplemental Contract Assumption Notice at such time and shall also be entitled to object to assumption and assignment of its Designated Contract in accordance with paragraphs 22 and 23 hereof.  Any Adequate Assurance Objection must be in writing, comply with the Bankruptcy Code, state with specificity the legal and factual bases therefor, and be filed with the Court and served on the Service Parties, the Successful Bidder, and the Back-Up Bidder (whose notice information shall be provided as part of the Auction Results Notice) so as to be received no later than 5:00 p.m. (Eastern) on May 27, 2021.  Notwithstanding anything contained in this Paragraph 25 or otherwise in this order, Debtors shall provide reasonably promptly upon qualification of a Qualified Bidder as such but in no event later than May 21, 2021 all adequate assurance information they receive from any Qualified Bidder in the form received to counsel for FC Encore Green Cove Springs, LLC and FC Encore Perry, LLC.

26.     Any counterparty to a Designated Contract that fails to file and serve an objection to assumption or assignment of its Designated Contract (including, without limitation, any Cure Objection or Adequate Assurance Objection) in accordance with the requirements set forth in this Order shall be forever barred from: (a) asserting that it is owed a Cure Amount in excess of that set forth in the Contract Assumption Notice or Supplemental Contract Assumption Notice, as applicable (and such Cure Amount shall be deemed the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults thereunder if a Successful Bidder ultimately decides to have such Designated Contract assumed by the Debtors and assigned to it);

(b) asserting any additional cure or other amounts with respect to such Designated Contract against the Debtors, such Successful Bidder, or the property of either of them; and (c) objecting, on any grounds, to assumption by the Debtors and assignment to such Successful Bidder of the relevant Designated Contract.

27.     Objections to assumption or assignment of any Designated Contract (including, without limitation, any Cure Objection or Adequate Assurance Objection) may be resolved by the Court at the Sale Hearing, or at a separate hearing to be scheduled either before or after the Sale Hearing.

28.     If an executory contract or unexpired lease is assumed and assigned pursuant to an order of this Court (including the Sale Order), the counterparty to such Designated Contract shall receive the applicable Cure Amount, if any (except for Disputed Cure Amounts), no later than ten (10) business days following the effective date of such assumption and assignment, with payment to be made pursuant to the terms of the Successful Bidder's Asset Purchase Agreement. Except to the extent otherwise provided in a Successful Bidder's Asset Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising under or in connection with the Designated Contracts after the assumption and assignment thereof pursuant to section 365(k) of the Bankruptcy Code.

29.     Notwithstanding any provision in this Order, the SNF Asset Purchase Agreement, or the Bidding Procedures to the contrary, this Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Designated Contract, including those relating to the Cure Amounts or the provision of adequate assurance of future performance.  No Designated Contract shall be deemed assumed or assumed and assigned until the later of (a) the date the Court has

entered an order authorizing the assumption and assignment of such Designated Contract or (b) the date the Sale is closed.  No Successful Bidder shall have any rights in and to any particular Designated Contract until such time as the particular Designated Contract is assumed and assigned to such Successful Bidder.

30.      The Debtors' inclusion of a Designated Contract on the Contract Assumption Notice or any Supplemental Contract Assumption Notice shall not guarantee that such Designated Contract will ultimately be assumed or assumed and assigned.  The Contract Assumption Notice and any Supplemental Contract Assumption Notice shall be without prejudice to the rights of the Successful Bidder to (a) decline to take assignment of any Designated Contract or (b) include additional Contracts or Leases for assumption and assignment pursuant to the provisions thereof.

31.      The inclusion of a Designated Contract and related Cure Amount on a Contract Assumption Notice or Supplemental Contract Assumption Notice shall not constitute or be deemed to be a determination or admission by the Debtors, the Stalking Horse Bidders, the Successful Bidders, the Back-Up Bidders, or any other party in interest that such Designated Contract is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Amount constitutes a claim against the Debtors in such amount (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, and causes of action with respect to each Designated Contract listed on the Contract Assumption Notice or any Supplemental Contract Assumption Notice.

### F.  Miscellaneous

32.      The Good Faith Deposits of the Qualified Bidders and the SNF Stalking Horse Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of

the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement.

33.    Nothing in this Order or the SNF Assets Bidding Procedures (including any rights or reserved rights of the Debtors to modify the Bidding Procedures, including the dates and deadlines set forth therein), shall prejudice any right of the DIP Lender under any DIP Document, including the right to declare a termination event in the event that any such modification results in a breach of any covenant, representation, warranty, or Milestone contained in any of the DIP Documents.

34.    To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

35.    The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

36.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, or 9014 (or otherwise), the terms and conditions of this Order shall be immediately effective and enforceable.

37.    <u>Sale Objections Preserved</u>.   All rights of parties in interest to object to the sales and/or respond thereto are preserved.

38.    <u>Required Approvals</u>. At the request of the United States Department of Housing and Urban Development ("**<u>HUD</u>**"), the following disclosure is provided.  HUD asserts that:

> Nothing herein shall limit, modify, or prejudice either: (a) the United States Department of Housing and Urban Development's (HUD) Office of Residential Care Facilities' (ORCF) authority and discretion to grant or withhold approvals to manage FHA-insured residential care facilities, HUD ORCF's authority to conduct any applicable HUD 2530 Previous Participation reviews, or required reviews and approvals by any other governmental or regulatory entities (such approvals and consents, the "Required CMC II Approvals"); or (b) any defenses or rights of the Debtors or any Successful Bidder related to the Required CMC II

Approvals under the Bankruptcy Code or otherwise. Further, nothing herein shall modify any of the loan documents relating to the FHA-insured facilities. Any Successful Bidder for CMC II's operating assets will pursue the Required CMC II Approvals at its sole cost.

The rights of the Debtors, their estates, and all parties in interest regarding the foregoing are reserved.

39.    <u>CMS</u>. At the request of the Centers for Medicare and Medicaid Services ("**<u>CMS</u>**"), the following disclosures are provided.  CMS asserts that:

Notwithstanding anything in the Motion, the Bidding Procedures, and/or the March 10, 2021 SNF Stalking Horse APA to the contrary, nothing in this Order shall be construed as authorizing the sale, transfer or assignment of any Medicare provider agreement to the Successful Bidder free and clear of successor liability for any liability arising from such provider agreements, nor as restricting the United States' right of setoff and recoupment. Any assumption and assignment of the Medicare provider agreements shall be authorized only in accordance with 11 U.S.C. § 365 and all applicable Medicare statutes and regulations.

To the extent the Successful Bid or the Backup Bid includes the assignment of a Medicare provider agreement, such bid must include a provision that requires the agreement be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code and all applicable Medicare statutes and regulations. No Successful Bid or Backup Bid may include a requirement that any Medicare provider agreement be sold, assigned, or transferred "free and clear" pursuant to section 363(f) of the Bankruptcy Code.

The rights of the Debtors, their estates, and all parties in interest regarding the foregoing are reserved.

# **EXHIBIT A-2**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CMC II, LLC,[1] | Case No. 21-10461 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 54** |

### BIDDING PROCEDURES

By the *Debtors' Motion for Entry of Orders (I)(A) Establishing Bidding Procedures for the Sales of the SNF Assets and Manager and Remaining Assets; (B) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing to Consider any Proposed Sale; and (E) Granting Certain Related Relief; and (II)(A) Approving Sales of the SNF Assets and Manager and Remaining Assets; (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* filed on March 11, 2021 [Docket No. 54] (the "**Bidding Procedures Motion**"), the Debtors sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for substantially all their assets, including the skilled nursing facilities operated by Debtors 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC (together, the "**SNF Debtors**" and their assets to be sold, as more specifically defined in the Bidding Procedures Motion, the "**SNF Assets**"). These Bidding Procedures apply to the sale of the SNF Assets.

The Debtors intend to use an Asset Purchase Agreement memorializing the terms of the bid for the SNF Assets (the "**SNF Stalking Horse Purchase Agreement**" and the bid detailed thereby, the "**SNF Stalking Horse Bid**" and the bidder that submitted the SNF Stalking Horse Bid, the "**SNF Stalking Horse Bidder**") attached to the Bidding Procedures Motion as **Exhibit C** as the basis for bids for the SNF Assets in connection with this sale process. Capitalized terms used in these Bidding Procedures and not otherwise defined shall have the meanings ascribed to such terms in the Bidding Procedures Motion or the Stalking Horse Purchase Agreement.

On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order (the "**Bidding Procedures Order**") in the Debtors' jointly-administered chapter 11 cases (the "**Chapter 11 Cases**") approving these bidding procedures (these "**SNF Bidding Procedures**"), and designating the SNF Stalking Horse Bid as

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824).  The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

the stalking horse bid for the SNF Assets. The Bankruptcy Court will have jurisdiction with respect to any dispute that may arise with respect to these SNF Bidding Procedures.

These SNF Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of the SNF Assets. The Debtors may consider bids for the SNF Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders. The Sale will be subject to the approval of the Bankruptcy Court, pursuant to sections 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").

## I.      Submissions to the Debtors.

All submissions to the Debtors required to be made under these SNF Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "**Debtors' Representatives**"):

A.   **Counsel.** Counsel to the Debtors, Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, Delaware 19801, ATTN: William E. Chipman Jr. (Chipman@ChipmanBrown.com) and Robert A. Weber (Weber@ChipmanBrown.com);

B.   **Investment Banker.** Broker to the Debtors, Evans Senior Investments, 1017 W. Washington Blvd, Unit 4F, Chicago, IL 60607, ATTN: Jason Stroiman (Jstroiman@EvansSenior.com) and Hank Fuller (Hfuller@EvansSenior.com).

C.   **Committee.** Counsel to the Official Committee of Unsecured Creditors, Porzio, Bromberg & Newman, P.C., 300 Delaware Avenue, Suite 1220, Wilmington, DE 19801 (ATTN: Cheryl A. Santaniello, Esq. (casantaniello@pbnlaw.com)); and 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962 (ATTN: Robert M. Schechter, Esq. (rmschechter@pbnlaw.com), William J. Hughes, Jr., Esq. (wjhughes@pbnlaw.com), Rachel A. Parisi, Esq. (raparisi@pbnlaw.com), David E. Sklar, Esq. (desklar@pbnlaw.com)).

## II.     Important Dates.

The following is a table setting forth key dates and deadlines with respect to the sale process:

| Event or Deadline | Date and Time |
|---|---|
| Sale Objection Deadline (for all sale objections other than those stemming from the identity of the Successful Bidders (if different than the Stalking Horse Bidder)) | **May 26, 2021 at 5:00 p.m. (Eastern)** |
| Contract Objection Deadline (for all objections other than adequate assurance of future performance, including to any proposed Cure Amount) | **May 26, 2021 at 5:00 p.m. (Eastern)** |
| Bid Deadline | **May 20, 2021 at 5:00 p.m. (Eastern)** |
| Selection of Qualified Bids | **May 21, 2021** |
| Auction (if necessary) | **May 25, 2021 at 10:00 a.m. (Eastern)** |
| Deadline to File Notice Designating Successful Bidder | **May 26, 2021 at 12:00 p.m. (noon) (Eastern)** |
| Deadline to Object to Adequate Assurance of Future Performance | **May 27, 2021 at 5:00 p.m. (Eastern)** |
| Deadline to Object to the Sale based on the Identity of the Successful Bidder (if different than the Stalking Horse Bidder) | **May 27, 2021 at 5:00 p.m. (Eastern)** |
| Sale Hearing | **June 2, 2021 at 1:00 p.m. (Eastern)** |

### III.    Participation Requirements.

#### A.  Potential Bidders.

To participate in the bidding process or otherwise be considered  in connection with the Sale, a person or entity interested in the SNF Assets (a "**Potential Bidder**") must first deliver to each of the Debtors' Representatives the following documents (collectively, the "**Preliminary Bid Documents**"):

- an executed confidentiality agreement on terms acceptable to the Debtors (a "**Confidentiality Agreement**") substantially similar to the confidentiality agreements in place with the Stalking Horse Bidder; and

- preliminary proof by the Potential Bidder of its financial capacity to close the proposed transaction, the adequacy of which must be acceptable to the Debtors.

#### B.  Notice of Acceptable Bidder.

Promptly after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors, in consultation with the Consultation Parties (as defined below), will determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct due diligence with respect to the SNF Assets, and the Debtors will provide counsel to each of the Consultation Parties with copies of such notices. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors in consultation with the Consultation Parties (each, an "**Acceptable Bidder**") may submit bids. Neither the SNF Assets Stalking Horse Bidder nor the Manager and Remaining Assets Stalking Horse Bidder (as defined in the Motion, and together with the SNF Assets Stalking Horse Bidder, the "**Stalking Horse Bidders**") shall be required to submit Preliminary Bid Documents and each of them is an Acceptable Bidder.

### IV.    Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. The Debtors will provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. The due diligence period will end on the Bid Deadline (as defined herein), and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information; *provided that* Qualified Bidders will retain access to the Debtors' electronic data room and any due diligence information provided prior to the Bid Deadline until conclusion of the Auction. Only Acceptable Bidders and their duly authorized representatives (to the extent provided in the applicable Confidentiality Agreement) shall be permitted to receive confidential information relating to the Debtors' assets or liabilities, or otherwise relating to the Sale.

The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided that* the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate the Sale; *provided, further,* that if the Debtors decline to provide such information to an Acceptable Bidder, they will promptly provide notice of such to the Consultation Parties.

**All due diligence requests must be directed to Evans Senior Investments, ATTN: Jason Stroiman (Jstroiman@EvansSenior.com) and Hank Fuller (Hfuller@EvansSenior.com).**

A. **Communications with Acceptable Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications with Acceptable Bidders (or prospective Acceptable Bidders) shall be through the Debtors' Representatives; provided, however, nothing herein shall be construed to limit the right of the Consultation Parties (the United States and the Official Committee of Unsecured Creditors) to request participation in such communications. No Acceptable Bidder may correspond with any other Acceptable Bidder regarding the terms of the Bids or the Auction, or otherwise collude in any way regarding the terms of any Bids or the Auction.

B. **Due Diligence from Acceptable Bidders.**

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors' Representatives regarding such Acceptable Bidder and its contemplated transaction. Failure by an Acceptable Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine in consultation with the Consultation Parties that such bidder is no longer an Acceptable Bidder or that a bid made by such bidder is not a Qualified Bid (as defined herein).

V.      **Bid Requirements.**

To become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to counsel to the Debtors an irrevocable written offer (each, a "**Bid**") that the Debtors determine to be a Qualified Bid as set forth herein. To be deemed a "Qualified Bid", a Bid must be determined by the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, to have satisfied the following requirements (collectively, the "**Bid Requirements**"):

1. *Delivery*. Be transmitted via email to the Debtors' Representatives (in .pdf or similar format) so as to be *actually received* on or before **May 20, 2021 at 5:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").

2. *Purchase Agreement.* Each Bid must be in writing and must include: (a) a purchase agreement signed by the Acceptable Bidder (a "**Modified Purchase Agreement**");

and (b) a marked version, or blackline, of the Modified Purchase Agreement reflecting any variations to the SNF Stalking Horse Purchase Agreement.[2]

3.  ***Assets and Liabilities.*** Each Bid may be a partial bid for only some of the SNF Assets, or a bulk bid to purchase all or substantially all of the SNF Assets. Additionally, each Bid must clearly state which liabilities of the Debtors the Acceptable Bidder is agreeing to assume. Interested bidders may bid on any assets owned by the SNF Debtors.

4.  ***Total Consideration.*** Each Bid must clearly set forth the amount of the total consideration to be provided to the Debtors, including and identifying separately any cash and non-cash components (the "**Bid Value**").  Any Bid providing for a non-cash component must be accompanied by either cash or a credit bid of the DIP Obligations in the amount of at least $2 million.  The Bid must confirm that such consideration is not subject to any contingencies.

5.  ***Minimum Bid.*** Provide for a Purchase Price equal to or greater than the Purchase Price set forth in the SNF Stalking Horse Purchase Agreement, plus the minimum overbid amount of $100,000.00 (the "**Minimum Bid Amount**").  Partial Bids may be permitted only if the combined consideration of all of highest non-overlapping Partial Bids received by the Debtors for the SNF Assets exceeds the Minimum Bid Amount.

6.  ***Deposit.*** Each Bid must be accompanied by a cash deposit in the amount equal to 10 percent of the cash consideration of the Bid Value, to be held in an escrow account to be identified and established by the Debtors (the "**Deposit**"); *provided,* that no Deposit shall be required with respect to any Bid that is a credit bid pursuant to Bankruptcy Code section 363(k) (in whole or in part) by the DIP Lender.

7.  ***Pro Forma Capital Structure.***  Each Bid must include a description of the Bidder's pro forma capital structure to demonstrate adequate assurance of future performance.

8.  ***Non-Contingent Bid.*** In addition to the signed purchase agreement, each Bid must include duly executed transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid Documents**"). The Bid Documents shall include a schedule of executory contracts and unexpired leases to be assumed to the extent applicable to the Bid, as well as all other material documents integral to such Bid.

9.  ***Employees.*** The Bid must detail the treatment of the employees of the SNF Debtors.

10. ***Conditions to Closing.*** The Bid must identify with particularity each and every condition to Closing.

11. ***No Financing, Approval, or Diligence Outs.*** The Bid must not be conditioned on obtaining any of the following: (a) financing; (b) board of directors or other similar approval; or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

---

[2]   The Debtors shall make available to Acceptable Bidders the forms of the Stalking Horse Purchase Agreement.

12. ***Due Diligence Acknowledgement.*** The Bid must include a written acknowledgement and representation that the Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Sale before making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Sale in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the SNF Assets, Sale, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed form of definitive agreement; and (d) the Bidder did not engage in any collusive conduct with respect to any Bids, the Auction, or the Sale and acted in good faith in submitting its Bid.

13. ***Irrevocable.*** The Bid is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is designated as a Backup Bidder (as designed below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bidding Procedures and (y) thirty days after the date of the Auction (the "**Backup Bid Expiration Date**").

14. ***No Break-Up Fee or Expense Reimbursement.*** The Bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

15. ***Designation of Assumed or Assumed and Assigned Contracts and Leases and Adequate Assurance of Future Performance.*** The Bid must contain a list of any and all executory contracts and unexpired leases of the Debtors, that are to be assumed and assigned in connection with a Sale (each a "**Contract**" and, collectively, the "**Contracts**" and once assumed, or assumed and assigned, a "**Designated Contract**") to the extent such list is not included in the Modified Purchase Agreement. The Potential Bidder must also include written documentation sufficient to demonstrate the Potential Bidder's ability to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Contracts on the list, including, without limitation, (i) the specific name of the entity to whom the Contract will be assigned; (ii) if available, audited financial statements and annual reports of the proposed purchaser and any other assignee for the past three (3) years, including all supplements or amendments thereto; (iii) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, and any financial projections, calculations and/or pro formas prepared in contemplation of purchasing the assets, including the Designated Contracts; (iv) all documents and other evidence of the proposed assignee's experience in the Debtors' industry; and (v) a contact person for the proposed assignee whom non-Debtor parties may contact directly in connection with adequate assurance of future performance. Should the Potential Bidder be a newly formed entity (a "**Newco**"), written evidence of adequate assurance of future performance should also include when such Newco was formed, the relevant financial information of the

equity sponsors of the Newco, how it will be financed together with evidence of firm financial commitments, and identify what credit enhancements will be available to guarantee the obligations under the Designated Contracts.

16. ***Identity.*** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom Evans Senior Investments and Chipman Brown Cicero & Cole LLP should contact regarding such Bid.

17. ***Committed Financing***. To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient non-contingent debt and/or equity funding commitments to satisfy the Acceptable Bidder's Bid Value and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

18. ***Same or Better Terms***.  Each Bid must be on terms that, in their totality, are determined by the Debtors, in their business judgment, to be the same or better than the terms set forth in the applicable Stalking Horse Purchase Agreement in their totality.

19. ***Time Frame for Closing.*** A Bid by an Acceptable Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated on or before the earlier of June 15, 2021 or the deadlines for closing set forth in the Stalking Horse Bid, unless otherwise agreed to by the Debtors in consultation with the Consultation Parties.

20. ***Authorization.*** Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, notwithstanding any contrary terms in its Bid, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer, but such Bid shall automatically terminate if it is not selected as the Successful Bid or Backup Bid at the conclusion of the Auction.

## VI.    Qualified Bidders.

A Bid that satisfies the Bid Requirements, as determined in the Debtors' business judgement, in consultation with the Consultation Parties, shall constitute a "**Qualified Bid**," and such Acceptable Bidder shall be a "**Qualified Bidder**." Within two business days after the Bid Deadline, the Debtors shall notify each Acceptable Bidder whether such party is a Qualified Bidder. Notwithstanding anything to the contrary herein, the Stalking Horse Bidders shall be Qualified Bidders. No party that, in the reasonable judgment of the Debtors, after consultation with the Consultation Parties, either is not negotiating or acting in good faith or acting in accordance with its contractual obligations, in its dealings with any Debtor or any of its subsidiaries may be a Qualified Bidder.

The Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline or postpone the Auction.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit and all accumulated interest thereon on or before the date that is five business days after the Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided,* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Acceptable Bid prior to the Bid Deadline or (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

## VII.    Auction.

If the Debtors have determined that there are one or more Qualified Bidders (other than the SNF Stalking Horse Bidder), the Debtors shall conduct an Auction to determine the highest and otherwise best Qualified Bid.  This determination shall take into account any factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, and without limitation: (a) the number, type, and nature of any changes requested by the Qualified Bidder to the SNF Stalking Horse Purchase Agreement, including the type and amount of SNF Assets sought and Assumed Obligations to be assumed in the Bid; (b) the amount and nature of the total consideration proposed

by the Qualified Bid; (c) the likelihood of the Bidder's ability to close a transaction, the conditions thereto, and the timing thereof; (d) any excluded assets, executory contracts, or unexpired leases; (e) the impact of transaction contemplated by the Bid Documents on the Debtors' employees; (f) any purchase-price adjustments; (g) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Bid Documents; (h) whether the Bid is a bulk bid or a Partial Bid for only some of the Debtors' assets; and (i) the tax consequences of such Qualified Bid (collectively, the "**Bid Assessment Criteria**").

No Qualified Bidder shall be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid, the Qualified Bidder (solely in its capacity as a Qualified Bidder) is deemed to have waived the right to request or file with the Court any request for expense reimbursement or any fee of any nature, including under section 503(b) of the Bankruptcy Code.

The Auction shall take place on May 25, 2021 at 10:00 a.m. (Eastern) by videoconference from the offices of Chipman, Brown Cicero & Cole, LLP, or such later date and time as selected by the Debtors. If the location, date or time are changed, the Debtors shall provide notice to all participants and other persons that have notified the Debtors of an intent to attend. The Auction shall be conducted in a timely fashion according to the following procedures.

### A. The Debtors Shall Conduct the Auction, if Any.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the leading Qualified Bid (or, in the case of Qualified Bids that are Partial Bids, the leadings Qualified Bids). All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of the Auction and of all Bids made and announced at the Auction, including the initial leading Qualified Bid, all Overbids, the Successful Bid, and the Backup Bid.

Only the Debtors, Qualified Bidders, the Official Committee Of Unsecured Creditors (the " **Committee**"), other Consultation Parties, the Stalking Horse Bidders, and each of their legal and financial advisors shall be entitled to participate in the Auction, and the Qualified Bidders shall appear by videoconference at the Auction, or through a duly authorized representative and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction. Bids at the Auction will be transcribed. Creditors that are not Qualified Bidders may attend the Auction to observe but may not participate.

### B. Procedures for Auction.

The Auction shall be governed by the following procedures:

1. Qualified Bidders shall appear by videoconference at the Auction, or through a duly authorized representative.

2. Except as otherwise set forth herein (including the limitations on modification of criteria for Qualified Bids), the Debtors may, in consultation with the Consultation Parties, waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the SNF Bidding Procedures Order, the SNF Stalking Horse Purchase Agreement, the DIP Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Court for the District of Delaware, or any order of the Bankruptcy Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest and otherwise best offer for the SNF Assets.

3. The Debtors will arrange for the actual bidding at the Auction to be transcribed. Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

4. Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that (i) it has not engaged in any collusion with the Debtors or any other Qualified Bidder regarding these Bidding Procedures, the Auction or any proposed transaction relating to the SNF Assets, and (ii) its bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bid.

5. Prior to the Auction, the Debtors shall identify the highest and best of the Qualified Bids (or, in the case of Qualified Bids that are Partial Bids, the leading Qualified Bids) received (the "**Opening Qualified Bid**"). Subsequent bidding will continue in minimum increments valued at not less than $100,000.00 cash (or a credit bid of DIP Obligations) or in such other amounts as to be determined by the Debtors (after consultation with the Consultation Parties) and announced at the Auction. Each Qualified Bidder (other than the SNF Stalking Horse Bidder or DIP Lender) shall provide evidence of its financial wherewithal and ability to consummate the Sale at the increased Purchase Price.

6. All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest and best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest and best bid.

7. In the Debtors' discretion, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the applicable SNF Stalking Horse Purchase Agreement or Modified Purchase Agreement, at the Auction in accordance with the terms and provisions of these Bidding Procedures; *provided*, *however*, that any such modifications to the SNF Stalking Horse Purchase Agreement or Modified Purchase Agreement, on an aggregate basis and viewed in

whole, shall not be less favorable to the Debtors as determined by the Debtors, in their business judgment, after consultation with the Consultation Parties.

8.  Upon conclusion of the bidding, the Auction shall be closed, and the Debtors shall, as soon as practicable, (i) identify and determine in their business judgment, after consultation with the Consultation Parties, the highest and best Qualified Bid for the SNF Assets (a "**Successful Bid**") and the entity submitting such Successful Bid (a "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, (iii) require the Successful Bidder to deliver an executed final purchase agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing, and (iv) file with the Court a designation of the Successful Bidder, the terms of the Successful Bid, the designation of any Backup Bidder, and the terms of any Backup Bid. Once the Auction is closed, no further bids shall be considered by the Debtors.

9.  In addition, the Debtors will determine, which Qualified Bid, if any, is the next highest and best Qualified Bid to the Successful Bid and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale. A Qualified Bidder who submitted a Qualified Bid and is designated a Backup Bid is a "**Backup Bidder**". Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

10. If a Successful Bidder for the SNF Assets fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select the Backup Bidder for such SNF Assets as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for such SNF Assets for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder for such SNF Assets without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## VIII.  Highest or Otherwise Best Bid.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the number, type, and nature of any changes to the form of Stalking Horse Purchase Agreement requested by the Qualified Bidder, including the type and amount of SNF Assets sought and Assumed Obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction, the conditions thereto, and the timing thereof; (d) any purchase-price adjustments; (e) indemnification or similar such provisions; (f) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Bid Documents; (g) whether the Qualified Bid is a bulk bid or a partial bid for only some of the Debtors' SNF Assets; (h) the tax consequences of such Qualified Bid; and (i) the Debtors'

assessment of the potential outcomes of alternative dispositions. The Debtors shall consult with the Consultation Parties in determining the highest or otherwise best Qualified Bid.

## IX. Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the SNF Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) to the extent not inconsistent with the Bidding Procedures, adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) to the extent not inconsistent with the Bidding Procedures, rejecting any or all Bids or Qualified Bids. Nothing in these Bidding Procedures shall prejudice any right of the DIP Lender under any DIP Document to declare a termination event in the event that any such modification results in a breach of any covenant, representation, warranty, or Milestone contained in any of the DIP Documents.

## X. Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale, the construction and enforcement of these Bidding Procedures, and/or the Bid Documents, as applicable.

## XI. Sale Hearing.

A hearing to consider approval of the Sale of the Debtors' SNF Assets to the Successful Bidder (the "**Sale Hearing**") is currently scheduled to take place on June 2, 2021, at 1:00 p.m. (Eastern Prevailing Time), before the Honorable John T. Dorsey, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., Room 5, Wilmington, Delaware 19801.

At the Sale Hearing, the Debtors shall present the Successful Bid and any Backup Bid to the Court for approval.

Objections to the Sale Motion, if any, must be made on or before May 26, 2021, at 5:00 p.m. (Eastern) (the "**Sale Motion Objection Deadline**"); *provided* that objections specific to the Auction or the Successful Bidder, if any, must be made on or before May 28, 2021, at 12:00 p.m. (noon) (Eastern) (the "**Auction Objection Deadline**"). All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be actually received no later than the Sale Objection Deadline or the Auction Objection Deadline, as applicable, by the following parties (the "**Notice Parties**"): Debtors' counsel, the U.S. Trustee, counsel to the Official Committee of Unsecured Creditors, and counsel to the SNF Stalking Horse Bidder.

## XII.    Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or before the date that is three business days after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors, in consultation with the Consultation Parties, shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XIII.    Consultation Parties.

The term "Consultation Parties" as used in these Bidding Procedures shall mean the Committee, the United States, and their respective professionals.

The Debtors shall use their commercially reasonable best efforts to consult with the Consultation Parties in respect of all material aspects of the bidding and Auction process in order to maximize value for all parties in interest. For the avoidance of doubt, however, the consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

The Debtors may not modify the consultation rights of any of the Consultation Parties set forth herein or in the Bidding Procedures Order without the consent of such affected party; *provided that* the Debtors may, in the exercise of their business judgment, take such steps as are necessary to ensure a competitive and transparent bidding and Auction process, including, but not limited to, limiting the consultation rights of a Consultation Party that is or becomes (or is affiliated with) a Qualified Bidder.

# EXHIBIT A-3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CMC II, LLC *et al.*,[1] | Case No. 21-10461 (JTD) |
| Debtors. | (Jointly Administered) |

## NOTICE OF AUCTION AND SALE OF SKILLED NURSING FACILITY ASSETS

**PLEASE TAKE NOTICE REGARDING THE FOLLOWING:**

1.　　On March 1, 2021, CMC II, LLC and its affiliates, as debtors and debtors-in-possession (the "**Debtors**") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.　　The Debtors have entered an Asset Purchase Agreement (the "**SNF Stalking Horse APA**") with Assisted 4 Living, Inc. (the "**SNF Stalking Horse Bidder**"), by which the SNF Stalking Horse Bidder or its designee of the Stalking Horse Bidder, as permitted pursuant to the SNF Stalking Horse APA, will acquire all or substantially all of the assets (the "**SNF Assets**") of Debtors 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC (collectively, the "**SNF Sellers**").

3.　　On March 11, 2021, in connection with a proposed sale of the Assets pursuant to section 363 of the Bankruptcy Code (the "**Sale**") to the successful bidders (the "**Successful Bidders**") at an auction, if necessary (the "**Auction**"), the Debtors filed a motion (the "**Motion**")[2] seeking, among other things, approval of SNF Bidding Procedures, procedures for contract assumption/ assignments, and scheduling a Sale Hearing, among other things.

4.　　By order, dated [DATE] (Docket No. __) (the "**SNF Bidding Procedures Order**"), the Bankruptcy Court approved the SNF Bidding Procedures (the "**SNF Bidding Procedures**") that govern the sale of, or other transaction to acquire, the SNF Assets by the highest and best bidder. Pursuant to the SNF Bidding Procedures Order, if one or more Qualified Bids are received before the Bid Deadline (as defined below), the Debtors will conduct the Auction among such Qualified Bidders to determine the highest and best Qualified Bid, beginning on **May 25, 2021, at 10 a.m. (Eastern)** at the offices of Chipman, Brown, Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, but to be held by telephone, or by videoconference or such other means that the Debtors may choose, or such other place and time

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824). The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

as the Debtors shall notify all bidders that have submitted Qualified Bids (including the Stalking Horse Bidders), counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases, and any creditors or other persons that have informed the Debtors they plan to attend.

5.     Only Qualified Bidders that have submitted Qualified Bids by **May 20, 2021, at 5:00 p.m. (Eastern)** (the "**Bid Deadline**") are eligible to participate in the Auction, subject to the terms of the SNF Bidding Procedures and other limitations as may reasonably be imposed by the Debtors.  All Qualified Bids must be accompanied with a deposit in an amount equal to ten percent (10%) of the total cash consideration provided under the proposed SNF Asset Purchase Agreement.

6.     Qualified Bidders participating in the Auction must appear by telephone, videoconference or by such other means as the Debtors may approve in their sole discretion.  Duly authorized representatives of such Qualified Bidders may also participate in the Auction by such means.  Only the Debtors, the Auction Bidders, and the Consultation Parties, together with their respective professional advisors may attend and participate in the Auction, also by telephone, videoconference, or by such other means as the Debtors may approve in their sole discretion.  Only Qualified Bidders (including the SNF Stalking Horse Bidder) will be entitled to make any Bids at the Auction.  For the avoidance of doubt, the Consultation Parties may attend the Auction without sending prior written notice of their intention to do so.  Creditors may attend the Auction after providing prior written notice to the Debtors but may not participate.

7.     If the Debtors do not receive a Qualified Bid (other than those of the SNF Stalking Horse Bidder), the Debtors will not conduct an Auction and shall designate the SNF Stalking Horse Bidder as the Successful Bidder.

8.     A hearing to consider approval of the Successful Bid (or to approve the SNF Stalking Horse APA, as applicable, if no Auction is held) (the "**Sale Hearing**") is proposed to take place on **June 2, 2021, at 1:00 p.m. (Eastern)**, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will present the Successful Bid for the SNF Assets to the Bankruptcy Court for approval.

9.     Objections, if any, to the Motion with respect to the sale of the SNF Assets to the Successful Bidder, must be filed with the Bankruptcy Court and served upon counsel to the Debtors, counsel to the Successful Bidder, and counsel to the Committee so as to be actually received by **May 26, 2021, at 5:00 p.m. (Eastern)**.  If a Successful Bidder that is not the SNF Stalking Horse Bidder prevails at the Auction, then the deadline to object to solely with respect to the conduct of the Auction, any changes to the revised APA, or the adequate assurance of future performance from such Successful Bidder, shall be extended to **May 27, 2021, at 5:00 p.m. (Eastern)**; provided, however, that the deadline to object to matters unrelated to the identity of a Successful Bidder or conduct of the Auction shall not be extended.  In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Bankruptcy Court no later than the applicable objection deadline and served on (i) proposed counsel to the

Debtors, (ii) counsel to the Stalking Horse Bidder, and counsel to each of the Consultation Parties. **Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by any Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363(f)(2) of the Bankruptcy Code.**

10.    This notice is subject to the fuller terms and conditions of the Motion, the SNF Bidding Procedures, and the SNF Bidding Procedures Order.  In the event of any conflict, the SNF Bidding Procedures Order shall control, and the Debtors encourage parties in interest to review such documents in their entirety.  Parties interested in receiving more information regarding the Sale and/or copies of any related document, including the Motion, or the SNF Bidding Procedures Order, may make a written request to proposed counsel for the Debtors, Chipman, Brown, Cicero & Cole, LLP, Hercules Plaza 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn. William E. Chipman, Jr., Esq., Robert A. Weber, Esq., and Mark L. Desgrosseilliers, Esq.) (see signature block below for email and telephone information)  In addition, copies of the Motion, the SNF Bidding Procedures Order, and this notice can be found (i) at https://www.cases.stretto.com/CMC (free of charge); and (ii) through PACER on the Bankruptcy Court's website, https://ecf.deb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 824 N. Market Street, Wilmington, Delaware 19801.

Dated: April __, 2021    **CHIPMAN BROWN CICERO & COLE, LLP**
        Wilmington, Delaware

        */s/ Draft*

        William E. Chipman, Jr. (No. 3818)
        Robert A. Weber (No. 4013)
        Mark L. Desgrosseilliers (No. 4083)
        Mark D. Olivere (No. 4291)
        Hercules Plaza
        1313 North Market Street, Suite 5400
        Wilmington, Delaware 19801
        Telephone:    (302) 295-0191
        Facsimile:    (302) 295-0199
        Email:    chipman@chipmanbrown.com
                  weber@chipmanbrown.com
                  desgross@chipmanbrown.com
                  olivere@chipmanbrown.com

        *Proposed Counsel to the Debtors and*
        *Debtors-In-Possession*

- 3 -

# EXHIBIT A-4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CMC II, LLC *et al.*,[1] | Case No. 21-10461 (JTD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PROPOSED ASSUMPTION, ASSIGNMENT, AND CURE AMOUNTS WITH RESPECT TO CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

**PLEASE TAKE NOTICE REGARDING THE FOLLOWING:**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A PARTY TO A DESIGNATED CONTRACT. A LIST OF THE DESIGNATED CONTRACTS IS ATTACHED HERETO AS <u>EXHIBIT A</u>. TO RECEIVE CURE AMOUNT INFORMATION BY EMAIL, YOU MUST PROVIDE AN EMAIL ADDRESS TO THE DEBTORS OR THEIR COUNSEL.**

1.      On March 1, 2021, CMC II, LLC and its affiliates, as debtors and debtors-in-possession (the "**Debtors**") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.      The Debtors have entered an Asset Purchase Agreement (the "**SNF Stalking Horse APA**") with Assisted 4 Living, Inc. (the "**SNF Stalking Horse Bidder**"), by which the SNF Stalking Horse Bidder or its designee of the Stalking Horse Bidder, as permitted pursuant to the SNF Stalking Horse APA, will acquire all or substantially all of the assets (the "**SNF Assets**") of 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC (collectively, the "**SNF Sellers**"), as further described in the SNF Stalking Horse APA.

3.      On March 11, 2021, in connection with a proposed sale of the Assets pursuant to section 363 of the Bankruptcy Code (the "**Sale**") to the successful bidder (the "**Successful Bidder**") at an auction, if necessary (the "**Auction**"), the Debtors filed a motion (the "**Motion**"), seeking, among other things, (i) entry of an order approving the bidding procedures governing the solicitation of higher or better bids; (ii) establishing procedures for the assumption or assignment

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824). The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

and assumption of executory contracts; (iii) scheduling a Sale Hearing; and (iv) granting related relief.

4.        By order, dated April __, 2021 (Docket No. __) (the "**SNF Bidding Procedures Order**"), the Bankruptcy Court approved the bidding procedures (the "**SNF Bidding Procedures**") that govern the sale of, or other transaction to acquire, the SNF Assets by the highest and best bidder.  Pursuant to the Sale and the Stalking Horse APA, the Debtors will assume and assign the Designated Contracts (as defined herein) to the Successful Bidder pursuant to the Sale Order to be entered approving the Sale following the Sale Hearing, and upon the consummation of the Sale and the effectiveness of such assumption and assignment, the Successful Bidder shall continue to perform under the applicable Designated Contracts.

5.        Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice that they may seek to assume and assign to the Successful Bidder the executory contracts or unexpired leases (each, a "**Designated Contract**") listed on **Exhibit A** attached hereto.  No later than ten (10) business days following the effective date of such assumption and assignment, the Successful Bidder will pay the Debtors' good-faith estimates of the amount of the required cure payments, as set forth on **Exhibit A** (the "**Cure Amount**") that relate to the Designated Contracts covered by each Successful Bid.  The payment of the Cure Amount by the Successful Bidder, as applicable, shall (i) constitute a cure of all defaults existing under the Designated Contracts, as applicable, and (ii) compensate the non-Debtor counterparties to such Designated Contracts for any actual pecuniary loss to such counterparty resulting from such default.  The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Designated Contracts, in full satisfaction of all amounts outstanding under the Designated Contracts.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A PARTY TO A DESIGNATED CONTRACT.  A LIST OF THE DESIGNATED CONTRACTS IS ATTACHED HERETO AS EXHIBIT A**.

6.        The inclusion of an executory contract or unexpired lease as a Designated Contract on **Exhibit A** is not a guarantee that such contract or unexpired lease will ultimately be assumed and assigned.  Should it be determined that any Designated Contract will not be assumed and assigned, the non-Debtor counterparty to such Designated Contract will be notified in writing of such decision.

7.        The Debtors may designate, up to and including at the Sale Hearing (the "**Designation Deadline**"), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtors and assigned to a Successful Bidder (the "**Additional Designated Contracts**").  As soon as practicable, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Designated Contracts and their counsel of record, if any, with a copy to the Consultation Parties, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease to a Successful Bidder, (ii) any assignee, and (iii) the corresponding estimated Cure Amount.

8.        The Debtors may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtors and assigned to a Successful Bidder (the "**Eliminated Agreements**")

through and including the Designation Deadline. The Debtors will, as soon as reasonably practicable after identifying an Eliminated Agreement, serve a notice on each of the impacted counterparties and their counsel of record, if any, with a copy to the Consultation Parties, indicating that the Debtors no longer intend to assume and assign the counterparty's executory contract or unexpired lease in connection with the Sale.

9.       Although the Debtors intended to make a good-faith effort to identify all Designated Contracts that may be assumed and assigned in connection with the Sale, the Debtors may discover that certain executory contracts were inadvertently omitted from the Designated Contracts list, or a Successful Bidder may identify other executory contracts that they desire to assume and assign in connection with the Sale. Accordingly, notwithstanding any provision herein to the contrary, the Debtors reserve the right at any time after the Designation Deadline and before the closing of the Sale, to (i) supplement the list of Designated Contracts with previously omitted executory contracts, (ii) remove Designated Contracts from the list of executory contracts ultimately selected as Designated Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Amount associated with any Designated Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption and assignment (a "**Supplemental Assumption Notice**") on each of the counterparties to such Designated Contracts and their counsel of record, if any, with a copy to the Consultation Parties; provided, however, the Debtors may not add an executory contract to the list of Designated Contracts that has been previously rejected by the Debtors by order of the Bankruptcy Court. Each Supplemental Assumption Notice will include the same information with respect to listed Designated Contracts as was included in the Contract Assumption Notice.

10.       Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served upon counsel to the Debtors, counsel to the SNF Stalking Horse Bidder, and counsel to the Committee so as to be actually received by **May 26, 2021, at 5:00 p.m. (Eastern)**, or such deadline set forth in the applicable Supplemental Assumption Notice. Any subsequently added contract for which notice is served later than May 20, 2021 will have an extended objection deadline equal to seven (7) days from the date of notice. If a Successful Bidder that is not the SNF Stalking Horse Bidder prevails at the Auction, then the deadline to object to assumption and assignment solely with respect to the adequate assurance of future payment from such Successful Bidder shall be extended to **May 27, 2021, at 5:00 p.m. (Eastern)**;[2] provided, however, that the deadline to object to the Cure Amount or other matters unrelated to the identity of such Successful Bidder shall not be extended.

---

[2] The Debtors will file, as promptly as possible after the close of the Auction, but, in any event by **May 26, 2021, at 12:00 p.m. (Eastern)**, a Notice of Successful Bidder (as defined in the Motion). The Debtors will also transmit the Notice of Successful Bidder by electronic mail or facsimile, where available, to the counterparties to the Designated

11.     If an objection to the Cure Amount or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place before the Honorable John T. Dorsey of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Courtroom # 5, Wilmington, Delaware 19801 at the Sale Hearing to be held on **June 2, 2021, at 1:00 p.m.  (Eastern)**.  A hearing regarding the Cure Amount, if any, may be continued at the discretion of the Debtors and the Successful Bidder until after the closing of the Sale.  Under current Bankruptcy Court procedures, which are subject to change by the Court, hearings are being conducted through Zoom rather than in person.

12.     Any party that does not timely object to the Cure Amount, the proposed assumption and assignment of a Designated Contract or Additional Designated Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or any Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Designated Contract or Additional Designated Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  **Such party shall be forever barred and estopped from objecting to (i) the Cure Amount, (ii) the assumption and assignment of the Designated Contract, or Additional Designated Contract, (iii) adequate assurance of future performance, (iv) the relief requested in the Motion, and (v) the Sale, whether applicable law otherwise excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidders and/or the Debtors, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors or the Successful Bidders, as applicable, with respect to such party's Designated Contract or Additional Designated Contract.  The assumption and assignment of the Designated Contract or Additional Designated Contract will not be deemed assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of such Designated Contract or (b) the date the Sale is closed.**

13.     After the Auction (if any), the Debtors will file a notice that identifies the Successful Bidder.  The Debtors and/or any Successful Bidder reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on **Exhibit A** hereto.

14.     Notwithstanding anything to the contrary herein or in the Motion, the Bidding Procedures, or the Bidding Procedures Order, service of this Contract Assumption Notice does not constitute an admission that any contract is an executory contract, that any lease is unexpired, or that the stated Cure Amount related to any executory contract or unexpired lease constitutes a claim against the Debtors or establishes any rights against any Successful Bidder (all rights with respect thereto being expressly reserved); provided further, that, following the Auction, the Successful Bidder or the Debtors, as applicable, reserve all rights to assert that any Cure Amount is lower than the Debtors' estimate, subject to each counterparty's opportunity to object.

**THE INCLUSION OF A CONTRACT OR UNEXPIRED LEASE ON THIS CONTRACT ASSUMPTION NOTICE IS NOT A GUARANTEE THAT SUCH CONTRACT OR UNEXPIRED LEASE WILL ULTIMATELY BE ASSUMED AND ASSIGNED.**

---

Contracts and will post the Notice of Successful Bidder on the claims and noticing agent's case-dedicated website at https://www.cases.stretto.com/CMC.

Dated: April __, 2021        **CHIPMAN BROWN CICERO & COLE, LLP**
       Wilmington, Delaware

                       /s/ *Draft*
                       William E. Chipman, Jr. (No. 3818)
                       Robert A. Weber (No. 4013)
                       Mark L. Desgrosseilliers (No. 4083)
                       Mark D. Olivere (No. 4291)
                       Hercules Plaza
                       1313 North Market Street, Suite 5400
                       Wilmington, Delaware 19801
                       Telephone:   (302) 295-0191
                       Facsimile:   (302) 295-0199
                       Email:      chipman@chipmanbrown.com
                                    weber@chipmanbrown.com
                                    desgross@chipmanbrown.com
                                    olivere@chipmanbrown.com

                       *Proposed Counsel to the Debtors and*
                       *Debtors-In-Possession*

# EXHIBIT A-5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CMC II, LLC *et al*.,[1] | Case No. 21-10461 (JTD) |
| Debtors. | (Jointly Administered) |

## ASSUMPTION PROCEDURES

On March 1, 2021, CMC II, LLC and its affiliated debtors (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtors have entered an Asset Purchase Agreement (the "**SNF Stalking Horse APA**") with Assisted 4 Living, Inc. (the "**SNF Stalking Horse Bidder**"), by which the SNF Stalking Horse Bidder or its designee, as permitted pursuant to the SNF Stalking Horse APA, will acquire all or substantially all of the assets (the "**SNF Assets**") of 207 Marshall Drive Operations LLC and 803 Oak Street Operations LLC (collectively, the "**SNF Sellers**"), as further provided in the SNF Stalking Horse APA.

On March 11, 2021, in connection with a proposed sale of the SNF Assets pursuant to section 363 of the Bankruptcy Code (the "**Sale**") to the successful bidder (the "**Successful Bidders**") at an auction (the "**Auction**"), the Debtors filed a motion (the "**Motion**"),[2] seeking, among other things, (i) entry of an order approving certain bidding procedures governing the solicitation of higher or better Bids; (ii) establishing procedures for the assumption or assignment and assumption of executory contracts; (iii) scheduling a Sale Hearing; and (iv) granting related relief.

On April __, 2021, the Bankruptcy Court entered an order (Docket No. __) (the "**SNF Bidding Procedures Order**") approving certain bidding procedures (the "**SNF Bidding Procedures**"). In connection with the SNF Bidding Procedures and associated sale process, the Debtors have developed the below assumption procedures (the "**Assumption Procedures**"). The Assumption Procedures will facilitate the fair and orderly assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and Consulate Management Company, LLC (5824). The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

The Assumption Procedures are as follows:

## I.  CONTRACT ASSUMPTION NOTICE.

No later than **May 5, 2021**, at 11:59 p.m. (Eastern) (the **"Assumption and Assignment Service Deadline"**), the Debtors shall serve a notice of contract assumption in substantially the form attached to the SNF Bidding Procedures Order as <u>**Exhibit 3**</u> (the **"Contract Assumption Notice"**) by first-class mail on all counterparties to all contracts expected to be assumed and assigned (**"Designated Contracts"**).    The Contract Assumption Notice will inform the counterparties of the timing and procedures relating to such assumption, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, (iii) the Debtors' good faith estimates of the amount of the required cure payments, if any (the **"Cure Amounts"**) related to the applicable executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline. Service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract, that any lease is unexpired, or that the stated Cure Amount related to any executory contract or unexpired lease constitutes a claim against the Debtors or establishes any rights against any Successful Bidder (all rights with respect thereto being expressly reserved). Following the Auction, the Successful Bidder or the Debtors, as applicable, reserve all rights to assert that any Cure Amount is lower than the Debtors' estimate, subject to each counterparty's opportunity to object.

**The inclusion of a contract or unexpired lease on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease will ultimately be assumed and assigned.  Contract counterparties that wish to receive information via email must provide their email information to the Debtors or their counsel.**

## II.  CURE AMOUNTS.

The payment of a Cure Amount by a Successful Bidder shall (i) constitute a cure of all defaults existing under an executory contract(s) or expired lease(s), as applicable, and (ii) compensate the non-Debtor party for any actual pecuniary loss to such counterparty resulting from such default.

## III.  ADDITIONS.

The Debtors may designate, until the earlier of the dates set forth in the SNF Stalking Horse APA or the Sale Hearing (the **"Designation Deadline"**), additional executory contracts and/or unexpired leases as agreements to be assumed by the Debtors and assigned to a Successful Bidder (the **"Additional Designated Contracts"**).  As soon as practicable, the Debtors shall serve a Contract Assumption Notice on each of the counterparties to such Additional Designated Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease to a Successful Bidder, (ii) any assignee, and (iii) the corresponding estimated Cure Amount. The Debtors shall also serve promptly a summary of adequate assurance information for Successful Bidder and any Back-Up Bidder.

## IV.  ELIMINATIONS.

The Debtors may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtors and assigned to a Successful Bidder (the **"Eliminated Agreements"**) through and including the Designation Deadline.  The Debtors shall, as soon as reasonably practicable after identifying an Eliminated Agreement, serve a notice on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtors no longer intend to assume and assign the counterparty's executory contract or unexpired lease to a Successful Bidder in connection with the Sale.

## V.    SUPPLEMENTAL CONTRACT ASSUMPTION NOTICE.

Although the Debtors intend to make a good faith effort to identify all Designated Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover that certain executory contracts were inadvertently omitted from the Designated Contracts list, or the Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with the Sale.  Accordingly, the Debtors reserve the right at any time after the Assumption and Assignment Service Deadline and before the closing of a Sale, to (i) supplement the list of Designated Contracts with previously omitted executory contracts, (ii) remove Designated Contracts from the list of executory contracts ultimately selected as Designated Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Amount associated with any Designated Contracts.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption and assignment (a **"Supplemental Assumption Notice"**) on each of the counterparties to such Designated Contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Designated Contracts that has been previously rejected by the Debtors by order of the Bankruptcy Court.  Each Supplemental Assumption Notice will include the same information with respect to listed Designated Contracts as was included in the Contract Assumption Notice.

## VI.    OBJECTIONS.

Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served upon counsel to the Debtors, counsel to the SNF Stalking Horse Bidder, and counsel to the Committee, so as to be actually received by **May 26, 2021, at 5:00 p.m. (Eastern)**, or such deadline set forth in the applicable Supplemental Assumption Notice.  If a Successful Bidder that is not the SNF Stalking Horse Bidder prevails at the Auction, then the deadline to object to assumption and assignment solely with respect to the adequate assurance of future payment from such Successful Bidder or the identity of such Successful Bidder shall be extended to **May 27, 2021, at 5:00 p.m. (noon) (Eastern)**; provided, however, that the deadline to object to the Cure Amount or other matters unrelated to the identity of such Successful Bidder shall not be extended.

If an objection to the Cure Amount or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place before the Honorable John T Dorsey of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Courtroom #5 Wilmington, Delaware 19801 at the Sale Hearing to be held on **June 2, 2021 at 1:00 p.m. (Eastern)**.  A hearing regarding the Cure Amount, if any, may be continued or scheduled at the discretion of the Debtors and the applicable Successful Bidder after the closing of the Sale. Under current procedures, hearings before the Bankruptcy Court are being conducted via Zoom rather than in person.

The Debtors shall provide copies of all Contract Assumption Notices and Supplemental Assumption Notices to the Consultation Parties.

Any party that does not timely object to the Cure Amount, the proposed assumption and assignment of a Designated Contract or Additional Designated Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or any Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Designated Contract or Additional Designated Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  **Such party shall be forever barred and estopped from objecting to (i) the Cure Amount, (ii) the assumption and assignment of the Designated Contract, or Additional Designated Contract, (iii) adequate assurance of future performance, (iv) the relief requested in the Motion, and (v) the Sale, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder and/or the Debtors, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors or the applicable Successful Bidder with respect to such party's Designated Contract or Additional Designated Contract.  The assumption and assignment of the Designated Contract or Additional Designated Contract will be deemed assumed and assigned effective on the later of (a) the date the Court has entered an order authorizing the assumption and assignment of such Designated Contract or (b) the date the applicable Sale has closed.**