IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CMC II, LLC,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 21-10461 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date:  August 11, 2021 at 3:00 p.m. (***prevailing* **Eastern Time)**<br><br>**Related Docket Nos. 54, 427 and 545** |

**DEBTORS' REPLY TO OBJECTION OF NUORION PARTNERS LLC TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) ESTABLISHING BIDDING PROCEDURES FOR THE SALES OF THE SNF ASSETS AND MANAGER AND REMAINING ASSETS; (B) ESTABLISHING PROCEDURES RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (C) APPROVING FORM AND MANNER OF NOTICE; (D) SCHEDULING A HEARING TO CONSIDER ANY PROPOSED SALE; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II)(A) APPROVING SALES OF THE SNF ASSETS AND MANAGER AND REMAINING ASSETS; (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF**

CMC II, LLC ("**CMC**") and certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**" or the "**Company**"), hereby file this reply (the "**Reply**") in response to the objection [Docket No. 427] (the "**Objection**") of NuOrion Partners, LLC ("**NuOrion**") to the Debtors' *Motion [Docket No. 54] For Entry of Orders (I)(A) Establishing Bidding Procedures for the Sales of the SNF Assets and Manager and Remaining Assets; (B) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing to Consider Any Proposed*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: CMC II, LLC (6973), Salus Rehabilitation, LLC (4037), 207 Marshall Drive Operations LLC (8470), 803 Oak Street Operations LLC (3900), Sea Crest Health Care Management, LLC (2940), and

*Sale; and (E) Granting Certain Related Relief; and (II)(A) Approving Sales of the SNF Assets and Manager and Remaining Assets; (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* (as relevant here, the "**Manager and Remaining Assets Sale Approval Motion**"). In support of this Reply, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.  NuOrion did not submit a bid and lacks standing to object to the Debtors' sale process. Under well-settled law, even disappointed bidders that (unlike NuOrion) have actively participated in a bidding process and lost an auction lack standing to assert an objection to a proposed sale. NuOrion is even further removed from having standing - - it did not even submit a bid. NuOrion sidesteps its obvious lack of standing by trying to reframe the issue, arguing that its doubt over the Debtors' ability to sell avoidance claims warrants a comfort order. This is a red herring. The salability of avoidance actions is an open question in the Third Circuit, and the Court need not resolve that question here, because no party with standing has objected on these grounds. NuOrion's Objection seeks an improper advisory opinion and should be overruled.

## BACKGROUND

A.  THE CHAPTER 11 CASES.

2.  On March 1, 2021 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

Consulate Management Company, LLC (5824). The address of the Debtors' corporate headquarters is 800 Concourse Parkway South, Maitland, Florida 32751.

3.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

4.  On March 19, 2021, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "**Committee**") in these Chapter 11 Cases [Docket No. 71].

5.  A description of the Debtors' businesses and reasons for filing these Chapter 11 Cases is set forth in detail in the *Declaration of Paul Rundell in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "**First Day Declaration**"), which is fully incorporated herein by reference.

6.  As explained in the First Day Declaration, the Debtors commenced the Chapter 11 Cases in response to the entry of enormous money judgments in the long-running prepetition *qui tam* False Claims Act case (the "**FCA Litigation**") brought by Ms. Ruckh.[2]

7.  Prior to the Petition Date, the Debtors negotiated the terms of separate stalking horse agreements for the sale of their skilled nursing facilities, the assets of CMC II, LLC and potential causes of action. On March 11, 2021, the Debtors filed the *Motion of Debtors for Entry of Orders (I)(A) Establishing Bidding Procedures for the Sales of the SNF Assets and Manager and Remaining Assets; (B) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (C) Approving Form and Manner of Notice; (D) Scheduling a Hearing to Consider Any Proposed Sale; and (E) Granting Certain Related Relief; and (II)(A) Approving Sales of the SNF Assets and Manager and Remaining Assets; (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* [Docket No. 54] (the "**Bidding Procedures Motion**").

8. Among other things, the Bidding Procedures Motion sought authority to sell potential claims and causes of action broadly defined as the "Manager and Remaining Assets." As required by Local Rule 6004-1(b)(iv)(K), the Bidding Procedures Motion made clear that the potential litigation assets to be to be sold included "all avoidance claims or causes of action arising under Chapter 5 of the Bankruptcy Code or applicable Law…" Docket No. 54 at 24. The Bidding Procedures Motion was heavily contested, with objections from several parties, but no objections were raised as to the Debtors' ability to convey such claims.

9. The Court granted the Bidding Procedures Motion with certain changes to reflect the Court's ruling on certain of the objections, including bifurcating the sale process for the skilled nursing facilities from the remainder of the assets being sold and setting a separate timeline for the sale of the Manager and Remaining Assets. *See* Docket Nos. 240 (order approving bidding procedures for SNF Assets), 302 (order approving bidding procedures for Manager and Remaining Assets). The bidding procedures order for the Manager and Remaining Assets specifically includes language preserving the rights of parties in interest to object to the sale. Docket No. 302 at 15, ¶ 37.

10. Thereafter, the Debtors engaged a team of investment banking and legal professionals from Configure Partners, LLC and Configure Partners Securities, LLC (together, "**Configure**") and McDonald Hopkins, LLC ("**McDonald**" and together with Configure, "**Configure/McDonald**"). The Court granted the Debtors' application to retain Configure/McDonald after a hearing. [Docket Nos. 349, 350].

11. As set forth in the *Supplemental Declaration of Paul Rundell in Support of Debtors' Motions to Approve Global Settlement [Docket No. 518] and Sale [Docket No. 54]* (the "**Supplemental Declaration**"), the Configure/McDonald team ran an exhaustive sale process

---

[2] *U.S.A. ex rel. Angela Ruckh v. CMC II, LLC et al.* (M.D. Fla.).

and market check, contacting approximately 90 potential bidders for the Debtors' litigation assets. Supplemental Declaration ¶¶ 36-38. No competing bids were submitted, resulting in the designation by the Debtors of the stalking horse bid by CPSTN Operations, LLC ("**CPSTN**") for the Manager and Remaining Assets as the successful bid for such assets. [Docket No. 435]

12. As set forth in detail in the Debtors' motion for approval of a global settlement [Docket No. 518] and the Supplemental Declaration, months of settlement negotiations among the Debtors' key constituents - - the United States, the Relator, the Committee, CPSTN and the Debtors' other non-Debtor affiliates (together with CPSTN, the "**Non-Debtor Affiliates**") and the Debtors - - have resulted in a global settlement. Under that global settlement, CPSTN will acquire the Manager and Remaining Assets and the SNF Assets for substantially increased consideration, including the credit bid of the full $5 million postpetition loan owed to CPSTN, the assumption of liabilities to trade vendors and personal injury/tort claimants and the payment of additional amounts to the United States and Relator.

13. On July 23, 2021, NuOrion filed its Objection. In the Objection, NuOrion concedes that "NuOrion did not submit a bid," and challenges the Debtors' ability to sell Chapter 5 claims. NuOrion concedes that its purpose is to "obtain clarity on those issues such that it may be possible for NuOrion to make a financing proposal in the future." Objection ¶¶ 3, 5. NuOrion also argues that the Debtors have failed to meet the applicable standards for approval of a sale under Section 363 or a settlement under Bankruptcy Rule 9019.

14. As set forth below, NuOrion lacks standing, and the arguments raised in its self-serving Objection are meritless. The Objection should be overruled.

## ARGUMENT

15. As its Objection makes clear, NuOrion is merely an opportunistic would-be lender, and is otherwise a stranger to the Debtors and these Chapter 11 Cases. *E.g.,* Objection at 5 ("NuOrion raises these issues with the Court in the hopes that questions concerning the ownership of those Chapter 5 Claims can be resolved ***such that NuOrion may be able to make a financing proposal*** for their investigation and pursuit.") (emphasis added). NuOrion is not even a frustrated bidder because it chose not to submit a bid and post a deposit. NuOrion unquestionably lacks standing, and the Court therefore should overrule its Objection.

16. Under settled case law, a bidder whose bid fails to win an auction lacks standing to challenge a sale. *See, e.g., In re Las Cruces Country Club, Inc.*, 585 B.R. 239, 245 (Bankr. D.N.M. 2018) ("Generally, an entity that is a stranger to the bankruptcy case except for its interest in purchasing an estate asset lacks standing to object to a motion to sell."); *In re LeBlanc, Inc.*, 299 B.R. 546, 551 (Bankr. N.D. Iowa 2003) (party's "status as a competing buyer does not give it standing to object"); *In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 (Bankr. W.D. Tex. 2000) ("A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving a sale"); *Delancy Inv. Group v. Mall At One Assocs., L.P. (In re Mall At One Assocs., L.P.)*, 1995 WL 318851, at *8 (Bankr. E.D. Pa. May 23, 1995) ("[T]here are numerous authorities which hold that a non-creditor whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale lacks standing to challenge the right of other bidders to consummate the sale"). *See also In re Nortel Networks, Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Dec. 4, 2009) (D.I. 2079) (in denying standing to an unsuccessful bidder, court describes as "uniform" cases holding that "in the absence of fraud, collusion, or bad faith, an objector does not have standing to contest the results of an auction[;]"

citations omitted). NuOrion, which is not even a frustrated bidder because of its failure to submit a bid, plainly lacks standing.[3]

17. Bidders (and would-be lenders, like NuOrion), are not parties in interest. *See* 11 U.S.C. § 1109; *In re Mall At One Assocs., L.P.*, 1995 WL 318851, at *8. Section 363(b) and related rules governing sales do not protect a disappointed bidder's speculative interest in purchasing estate assets; instead, those protect the interests of the estate. *See In re NEPSCO, Inc.,* 36 B.R. 25, 26-27 (Bankr. D. Me. 1983) ("The Court finds nothing to indicate that prospective purchasers are within the zone of interests intended to be protected through this statutory scheme."). Only parties in interest may be heard, and NuOrion is not a party in interest. Accordingly, NuOrion lacks standing and its Objection should be overruled.

18. NuOrion also contends that in *Cybergenics*, the Court held that a chapter 11 debtor cannot sell state law fraudulent transfer claims. *See* Objection, pg.4 ¶6. However, in *Cybergenics*, the Third Circuit held only that the debtor's asset purchase agreement did not include certain fraudulent transfer claims sale because the contract only referred to "assets" and such claims were not "assets" of the debtor. *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243-45 (3d Cir. 2000). The Third Circuit itself recently acknowledged that whether a chapter 11 debtor may sell state law fraudulent transfer claims remains an open question. *See Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital, LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, *285 (3d Cir. 2020) ("*Cybergenics* does not hold that trustees cannot transfer causes of action. ***It leaves that question open*** because the asset transfer at issue did not reach the creditors' claims.") (emphasis added); *see also Claridge Associates, LLC v. Schepis (In re*

---

[3] The Debtors' advisors communicated to potential bidders, including counsel for NuOrion, that the Debtors were open to considering structured or conditional bids and would determine the highest or otherwise best after

*Pursuit Capital Management, LLC)*, 595 B.R. 631, 656-57 (Bankr. D. Del. 2018) (recognizing that "the Third Circuit has ***not*** determined whether avoidance actions are property of the estate or whether such claims or a trustee's right to pursue avoidance actions can be sold.") (emphasis added).

19. No party in interest with standing has objected on these grounds, and thus, there is no "real and substantial controversy" for the Court to decide. *See In re Grand Jury Matter*, 673 F.2d 688, 694 n. 12 (3d Cir. 1982) ("To avoid being merely advisory, a court's judgment must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts.'") (*quoting Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)); *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (*quoting North Carolina v. Rice*, 404 U.S. 244, 246, 30 L. Ed. 2d 413, 92 S. Ct. 402 (1971)). ("Ultimately, [a] case must involve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'") (internal citation omitted). The Court need not decide the issue in this case because NuOrion's Objection is an improper request for an advisory opinion.

25. NuOrion also asserts that the Debtors have not met the standards for approval of a sale or settlement because they have failed to provide an analysis and valuation of ostensible Chapter 5 claims, but these arguments miss the mark. *See* Objection ¶¶ 11, 14  NuOrion cites no authority for its proposition that these are required elements of a sale or settlement approval, and, moreover, ignores the Debtors' explanation in the Sale Motion of the value presented by CPSTN's stalking horse offer (a credit bid of $3 million of the DIP loan balance). *See* Sale

---

reviewing such bids, but no competing bids were received.

Motion ¶ 35 ("The bargained-for settlement value of those claims reflected in the Manager and Remaining Assets Stalking Horse Bid is equal to the approximate amount of the potential intercompany accounts receivable that Debtors' independent representatives view as potentially collectable in litigation, without discounting for litigation expense or uncertainty, but taking into account portions of such accounts that are of doubtful or uncertain collectability due to age, documentation, potential defenses (including setoff and recoupment) and possible difficulties in collection.").

26. Finally, as explained in the Supplemental Declaration, the Debtors' litigation assets were extensively marketed by Configure/McDonald pursuant to the court-approved bidding procedures, a market test that conclusively established the adequacy of the sale price of the stalking horse offer. Bidders were given access to information to conduct their own due diligence and encouraged to submit a competing bids. Although no competing bids were submitted, the global settlement discussions involving the United States, the Relator, the Committee, the Debtors and CPSTN resulted in the substantial increase of the consideration to be paid by CPSTN, to include, among other things, the full $5 million DIP loan balance, significant additional assumed liabilities, and significant additional amounts payable to the Debtors' largest creditors. NuOrion's argument that more detail regarding the Debtors' potential Chapter 5 claims is required so that NuOrion, which posed as a potential bidder, can decide whether to propose an unsolicited loan, lacks merit and should be overruled.

**WHEREFORE**, for the reasons stated herein, the Debtors respectfully request that the Court enter the proposed order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: September 13, 2021  
        Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Robert A. Weber*

William E. Chipman, Jr. (No. 3818)  
Robert A. Weber (No. 4013)  
Mark D. Olivere (No. 4291)  
Hercules Plaza  
1313 North Market Street, Suite 5400  
Wilmington, Delaware 19801  
Telephone:   (302) 295-0191  
Facsimile:    (302) 295-0199  
Email:        chipman@chipmanbrown.com  
               weber@chipmanbrown.com  
               olivere@chipmanbrown.com

*Counsel for the Debtors and Debtors-in-Possession*